FIRST DIVISION
February 13, 2007

Nos. 1-05-1888 and 1-05-3169, Consolidated

| | | |
|---|---|---|
| TANYA VEGA and JOSE VEGA, Indiv. and as Parents and Next Friends of Bryanna Vega, a Minor, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 01 L 8870 |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a METRA; and CHICAGO PARK DISTRICT, | ) ) ) ) ) | Honorable Jeffrey Lawrence, |
| Defendants-Appellees. | ) ) | Judge Presiding. |

JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs Tanya and Jose Vega appeal from orders of summary judgment entered in favor of defendants Northeast Illinois Regional Commuter Railroad Corp., doing business as Metra, and the Chicago Park District. Plaintiffs' eight-year-old daughter Bryanna was struck and injured by a Metra train as she crossed a railroad track adjacent to Ridge Park, a city park, on July 26, 2000. She reached the track by going around a fence that stopped short of fully barricading the park grounds from the railroad track. Plaintiffs filed a 12-count complaint, alleging negligence against Metra, the park district and the City of Chicago. Plaintiffs voluntarily dismissed the city as a defendant. Metra and the park district filed motions for summary judgment that the trial court

1-05-1888 and 1-05-3169, Cons.

granted. Plaintiffs appeal. We affirm.

Plaintiffs alleged in their complaint that Metra erected or caused to be erected fencing between its tracks and Ridge Park, that the fence did not run the entire distance between the Metra tracks and Ridge Park and that Metra knew or should have known that children crossed the unfenced portion of its right-of-way to access Ridge Park. Plaintiffs alleged that Metra was negligent in failing to fence or otherwise barricade adequately its tracks and right of way, failing to erect signs or warn pedestrians of the dangers of crossing its tracks and right-of-way and failing to keep a proper lookout. Plaintiffs alleged that Metra showed "utter indifference to or conscious disregard for the safety to the public" and committed "wilful and wanton acts and omissions." Plaintiffs made essentially the same allegations against the park district, adding claims that the district knew or should have known that children and other pedestrians crossed the unfenced portion of the right-of-way to access Ridge Park.

The evidence included discovery depositions. Bryanna, age eight in 2000, testified that on the day of the accident she was going to the park with her uncles, David and Malcolm. The tracks were between the park and the home of Bryanna's grandmother, the uncles' mother. Bryanna said she was running across the tracks when she was hit by the train. She said she did not remember having crossed the tracks at that location other than on the day of the accident.

Bryanna's uncle David Warren, about age 13 in 2000, testified that he had taken Bryanna to the park more than five times before the day of the accident, using the shortcut more than once. David said when he went to the park with his brothers, they would "hop over the fence" to reach the tracks. Bryanna's uncle Malcolm Warren, age 10 in 2000, said he would take either 96th

2

Street where there were crossing gates or "the shortcut" across the tracks when going to the park. Plaintiffs neither presented nor elicited testimony that anyone else used the shortcut or that the boys always or usually used the shortcut.

Charlotte Warren, Bryanna's grandmother, said when Bryanna's mother Tanya Vega was a child, "everybody" used to go through the opening in the fence and cross the tracks to get to the park. She said there was no hole or opening in the fence in 2000. Tanya said she was last in Ridge Park about 20 years earlier. Tanya said that when she was younger, she and others entered the park by passing through an opening or hole in a fence next to the railroad tracks and crossing the tracks. Plaintiffs neither presented nor elicited testimony that the shortcut was known to these women or other residents of the area.

Tracy Hurley was the engineer on the Metra train that struck Bryanna. He said that he had not seen people crossing the tracks to go to or from the park before that day. Hurley said he could not recall a specific instance when he saw pedestrians cross in front of the train in that area.

John MacAskill, a supervisor of Ridge Park, testified that he had worked at Ridge Park between 1974 and 1989. He said he then returned to the park as a supervisor and had worked there for nine years before the accident. MacAskill said when Bryanna was injured, a chain-link fence ran along the Metra right-of-way and the east end of Ridge Park, beginning at 96th Street and ending around 97th Street. He said a fence had been in the same location when he worked at the park between 1974 and 1989. MacAskill said he had not seen anyone maintaining or painting the fence and, to his knowledge, no park district employees worked on the fence. He said he was unaware that pedestrians crossed the tracks to enter the south end of the park. He testified that in

2001, after the accident, a wrought iron fence was installed around the perimeter of the park. He said the new fence was erected by GF Structures, but he did not know if it had been hired by Metra or the park district. On cross-examination MacAskill said he was told by his former supervisor, now deceased, that Metra had installed the fence in place at the time of the accident. He said that neither he nor, to his knowledge, his coworkers knew of a hole in the fence when he worked at Ridge Park between 1974 and 1989.

The evidence included as plaintiffs' exhibits eight color photographs of the track, fence and surrounding areas. The photos were taken after the accident but before a new fence was erected around the perimeter of the park in 2001. None of the photos shows a well-worn path leading to or from the railroad right-of-way. The evidence also included the park district's "plot plan" drawing of Ridge Park. Neither the plan nor the deposition testimony established which entity owned, installed or maintained the fence between the tracks and the park.

At a hearing on Metra's motion for summary judgment, plaintiffs argued that the existence of the path across the tracks meant that Bryanna was a "permitted" or "intended" user, that the end of fencing adjacent to the path served as an unmarked crossing and that the legal status of Bryanna was not that of a trespasser. The trial court concluded that Bryanna was a trespasser under section 18c-7503(a) of the Illinois Commercial Transportation Law (Transportation Law) (625 ILCS 5/18c-7503(a) (West 2000)). The Transportation Law prohibits walking on railroad property on or along the right of way except at public crossings. 625 ILCS 5/18c-7503(a) (West 2000). The trial court entered an order of summary judgment in favor of Metra and continued the proceedings as to the park district. The court later entered an order of summary judgment in

4

1-05-1888 and 1-05-3169, Cons.

favor of the park district.

The appeals were consolidated at plaintiffs' request. Three months after plaintiffs filed their appellate brief, Nelson v. Northeast Illinois Regional Commuter R.R. Corp., 364 Ill. App. 3d 181, 845 N.E.2d 884 (2006), was filed. The issue in Nelson was whether Metra owed a duty of care under the frequent trespass doctrine to a 15-year-old girl who was injured by a train as she crossed a railroad track. Nelson, 364 Ill. App. 3d at 184. Plaintiffs sought and received leave of this court to cite Nelson as supplemental authority. Plaintiffs filed a supplemental brief where they argued for the first time that Bryanna was a frequent trespasser.

Plaintiffs first argued: "Because Nelson has established a duty of ordinary care owed by the landowner when the frequent trespasser doctrine is applicable, summary judgment must be reversed." Plaintiffs claimed that "[t]he frequent trespasser doctrine establishes a duty of ordinary care even if the danger was open and obvious" and "[t]he frequent trespasser doctrine establishes a duty of ordinary care even with the existence of the [Transportation Law]." Plaintiffs next contended: "Defendant-Appellee's arguments regarding the law set forth in Nelson are without merit." Plaintiffs claimed that "Nelson establishes that the [Local Governmental and Governmental Employees] Tort Immunity Act [(Tort Immunity Act) (745 ILCS 10/3-102(a) (West 2002))] only covers dangerous conditions on the property, not activities on the property, and thus Metra cannot be immunized by the [Tort Immunity] Act." Plaintiffs also maintained that defendants' arguments were "wholly erroneous because a triable issue of material fact exists as to whether a path existed leading to where Bryanna Vega crossed the tracks" and "whether Bryanna Vega should be considered a frequent trespasser."

5

1-05-1888 and 1-05-3169, Cons.

Because plaintiffs' allegation that Bryanna was a frequent trespasser was argued for the first time on appeal, it is waived. Haudrich v. Howmedica, Inc., 169 Ill. 2d 525, 536, 662 N.E.2d 1248 (1996). Plaintiffs cannot bootstrap a frequent trespass theory into their case on appeal because the frequent trespass doctrine as articulated in Nelson was not a new enunciation of the law. A frequent trespass theory could have been argued by plaintiffs at the outset of this litigation. The court in Nelson relied on the established principles stated in McKinnon v. Northeast Illinois Regional Commuter R.R. Corp., 263 Ill. App. 3d 774, 777, 635 N.E.2d 744 (1994), and the cases cited in it, including Miller v. General Motors Corp., 207 Ill. App. 3d 148, 155, 565 N.E.2d 687 (1990), and Lee v. Chicago Transit Authority, 152 Ill. 2d 432, 446-47, 605 N.E.2d 493 (1992). Despite waiver, we will address plaintiffs' frequent trespass argument. See Geise v. Phoenix Co. of Chicago, Inc., 159 Ill. 2d 507, 514, 639 N.E.2d 1273 (1994) (the rule of waiver is a limitation on the parties, not the courts).

The standard of review for orders of summary judgment is *de novo*. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

A motion for summary judgment should be granted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2000). Where a plaintiff offers only conclusions that are unsupported by facts admissible in evidence, there is not a genuine issue of material fact to preclude summary judgment. Lesnik v. Estate of Lesnik, 82 Ill. App. 3d 1102, 1106, 403 N.E.2d 683 (1980). Naked allegations that are the conclusion of the pleader do not control the outcome of a motion

6

for summary judgment.  Daniels v. Weiss, 17 Ill. App. 3d 294, 300, 308 N.E.2d 46 (1974).

To succeed in an action for negligence, the plaintiff must establish that the defendant owed a duty of care to the plaintiff, the defendant breached that duty and the resulting injury to the plaintiff was proximately caused by the breach.  Bonner v. City of Chicago, 334 Ill. App. 3d 481, 483, 778 N.E.2d 285 (2002).  A defendant will not be found negligent unless the plaintiff can demonstrate that a duty was owed.  Sandoval v. City of Chicago, 357 Ill. App. 3d 1023, 1027, 830 N.E.2d 722 (2005).  "Whether a duty of care exists is a question of law, appropriately determined by the trial court on a motion for summary judgment."  Sandoval, 357 Ill. App. 3d at 1027.  The plaintiff must make an affirmative showing from which the court could infer the existence of a duty.  Schoondyke v. Heil, Heil, Smart & Golee, Inc., 89 Ill. App. 3d 640, 643, 411 N.E.2d 1168 (1980).  Without facts from which the court could infer the existence of a duty, the plaintiff could not recover and summary judgment for the defendant must be affirmed.  Hill v. Chicago Housing Authority, 233 Ill. App. 3d 923, 929, 599 N.E.2d 1118 (1992).

A review of the duty owed by landowners to trespassers, including frequent trespassers, appears in Miller v. General Motors Corp., 207 Ill. App. 3d 148, 153-55, 565 N.E.2d 687 (1990):

"It is well settled that the liability of an owner or occupier of land (landowner) has been set in terms of duty.  Those who enter upon land are generally divided into three fixed categories—trespassers, licensees, and invitees—and the landowner has specific duties regarding persons within each category.  ***

The lowest point on the 'legal-duty-owed' scale is the trespasser, defined

7

as a person who enters or remains upon land in the possession of another without a privilege to do so. [Citations.] *** [T]he general rule, subject to several qualifications, is that a landowner is not liable for injury to a trespasser caused by the landowner's failure to exercise reasonable care to put his land in a safe condition for the trespasser, or to carry on his activities in a manner which does not endanger the trespasser. [Citations.]

  ***

From the general rule of nonliability of a landowner to a trespasser, the rest of the law regarding trespassers is a list of exceptions. These exceptions have developed because of the concern that human safety ought to be more important than the landowner's interest in unrestricted freedom to use his own land as he sees fit. *** This rule applies mostly in the case of frequent trespass upon a limited area. [Citation.]

When a landowner knows, or should know from facts within his knowledge, that trespassers are in the habit of entering his land at a particular point or of traversing an area of small size, many courts hold that there is a duty of reasonable care to discover and protect trespassers in the course of the landowner's activities. [Citation.] This duty is imposed because the burden of looking out for trespassers is not great. A typical case is the frequent use of a 'beaten path' that crosses a railroad track, which is held to impose a duty of reasonable care as to the operation of trains. [Citation.] *** Liability has been

extended in such cases because the landowner's continued toleration of the trespass amounts to permission to make use of the land, so that the plaintiff is not a trespasser but a licensee. [Mentesana v. LaFranco, 73 Ill. App. 3d 204, 209, 391 N.E.2d 416 (1979).]"

Our supreme court affirmed the vitality of the frequent trespass exception in Lee, 152 Ill. 2d at 446-47: "Courts have *** found that the landowner owes a duty of ordinary care to those who are frequent trespassers in a limited area where the landowner knows or should know of their constant intrusion," citing Bernier v. Illinois Central R.R. Co., 296 Ill. 464, 471, 129 N.E. 747 (1921), and Restatement (Second) of Torts §334 (1965).

Lawsuits arising from railroad accidents have contributed to the development of the frequent trespass doctrine in Illinois. In Bernier, 296 Ill. at 471, the court affirmed a jury's finding that the railroad owed a duty to the victim who crossed the railroad's right of way on a cinder path that pedestrians had been in the habit of using for more than 10 years to cross the tracks. In Joy v. Chicago, Burlington & Quincy R.R. Co., 263 Ill. 465, 468, 105 N.E. 330 (1914), the court found that the law imposed a duty on a railroad to keep a lookout for trespassers where it knew or was chargeable with the knowledge that "a considerable number of people" in a populous area crossed its tracks frequently over a "considerable period of time." In McDaniels v. Terminal R.R. Ass'n of St. Louis, 302 Ill. App. 332, 344-45, 23 N.E.2d 785 (1939), the court decided that a railroad owed a duty to a plaintiff who was injured by a girder thrown from a viaduct by railroad employees as the plaintiff walked on a "well-worn and much traveled pathway."

9

1-05-1888 and 1-05-3169, Cons.

In Rodriguez v. Norfolk & Western Ry. Co., 228 Ill. App. 3d 1024, 1026, 593 N.E.2d 597 (1992), the court determined that the railroad did not owe a duty to a trespasser who was injured while walking along the railroad tracks. The evidence at the jury trial included the testimony of witnesses that children, teenagers, adults and railroad workers used a dirt path to reach and cross the tracks. Rodriguez, 228 Ill. App. 3d at 1027. One witness said children had used the path " 'a half dozen times during the summer.' " Rodriguez, 228 Ill. App. 3d at 1027. Another said he " 'sometimes' " saw children crossing the tracks. Rodriguez, 228 Ill. App. 3d at 1029. Another witness testified that the path was steep and overgrown with weeds. Rodriguez, 228 Ill. App. 3d at 1030. The jury found in the railroad's favor. On appeal, the plaintiff asked this court to determine whether the railroad owed the plaintiff a duty to construct a fence and warn him of the open and obvious danger. Rodriguez, 228 Ill. App. 3d at 1037. The court found as a matter of law that the victim was a trespasser to whom no duty was owed. Rodriguez, 228 Ill. App. 3d at 1040. The court's rationale was that the plaintiff was not on the tracks at the railroad's request but had entered the premises without permission. Rodriguez, 228 Ill. App. 3d at 1039. "[P]laintiff stated that he voluntarily left the parking lot near the fruit stand and climbed the embankment up a gravel path." Rodriguez, 228 Ill. App. 3d at 1039. "[A]n intruder who comes along the possessor's land without his permission has no right to demand that the possessor provide him with a safe place to trespass, or that the possessor protect the trespasser from his own wrongful use of the possessor's property." Rodriguez, 228 Ill. App. 3d at 1039, citing Miller, 207 Ill. App. 3d at 154.

In 1994, the court in McKinnon, 263 Ill. App. 3d at 779, again applied the frequent trespass exception. The victim was killed by a Metra train while crossing railroad tracks. Relying

10

on Miller, Lee and their antecedents, the court concluded that the allegations in the plaintiff's complaint were sufficient to set forth a cause of action for negligence under the frequent trespass exception to the general rule that no duty is owed to trespassers. McKinnon, 263 Ill. App. 3d at 779. The plaintiff alleged in her complaint that " 'the defendant's right of way *** was in a densely populated area, easily accessible to the public, and particularly accessible and inviting to persons conducting business or engaging in recreational or general activities who found it necessary to cross the tracks in the area.' " McKinnon, 263 Ill. App. 3d at 775. The plaintiff further alleged that the defendant " 'for a long time prior to the date in question permitted and allowed residents and other persons to come upon and cross its easily-accessible right-of-way, and it became the custom and habit of persons to walk onto, upon and across the right-of-way and that as a result there were numerous regular well-worn paths on the right-of-way and its embankments on either side of the tracks leading to and from various business establishments and homes.' " McKinnon, 263 Ill. App. 3d at 775. The plaintiff asserted that Metra knew or, in the exercise of ordinary care and caution, should have known that pedestrians were accustomed to crossing the tracks. McKinnon, 263 Ill. App. 3d at 775. The court applied the frequent trespass exception: "It is apparent from the [supreme] court's recent reference to the [frequent trespass] exception [in Lee] that *** the exception remains good law in Illinois." McKinnon, 263 Ill. App. 3d at 779.

In 2006, this court in Nelson further refined the frequent trespass doctrine. Nelson, 364 Ill. App. 3d at 188. There, a 15-year-old plaintiff was struck by a train while trespassing on the defendant's railroad tracks. Nelson, 364 Ill. App. 3d at 183. Her complaint alleged that Metra was negligent in operating its train and failing to maintain fences or barriers to prevent trespassing

11

1-05-1888 and 1-05-3169, Cons.

on its right-of-way and tracks.  Nelson, 364 Ill. App. 3d at 183.  In her discovery deposition, the plaintiff testified that she reached the track by way of a path that she and her friends used daily to commute to and from school.  Nelson, 364 Ill. App. 3d at 184.  The defendant filed and the trial court denied a motion for summary judgment.  The trial court certified two questions for review under Supreme Court Rule 308 (134 Ill. 2d R. 308) (an interlocutory order that involves a potentially contentious question of law may be appealed at the discretion of the appellate court).

The first question was: " 'Is the risk of crossing a railroad track on which trains may be operating an open and obvious peril for which a railroad/operator owes no duty of care, regardless of the legal status of the individual crossing the track?' "  Nelson, 364 Ill. App. 3d at 183.  The court held: "any open and obvious risk in crossing the railroad track did not negate the [railroad's] duty *** under the frequent trespass doctrine."  Nelson, 364 Ill. App. 3d at 184.  The second question was: " 'Under §3-102(a) of the [Tort Immunity Act (745 ILCS 10/3-102(a) (West 2002))], does a local public entity's duty to exercise ordinary care to maintain its property in a reasonably safe condition for "intended and permitted users" apply only to passive conditions of the premises or does such duty also apply to activities or operations conducted on the premises by the local public entity?' "  Nelson, 364 Ill. App. 3d at 183-84.  Section 3-102(a) provides that a local public entity has a "duty to exercise ordinary care" to keep its property in "a reasonably safe condition" for the use of the people whom the entity "intended and permitted" to use the property.  745 ILCS 10/3-102 (a) (West 2000).  The court in Nelson concluded: "section 3-102(a) immunity applies where the following two requirements are met: (1) the injured party was not an intended and permitted user of the property; and (2) the injury arose from the condition of the property.  Section 3-102(a) immunity does not apply where the injuries arose from an unsafe activity

12

conducted on otherwise safe property." <u>Nelson</u>, 364 Ill. App. 3d at 190.

Here we must conclude that Metra did not owe a duty of care to Bryanna under the frequent trespass doctrine. The cases we have reviewed show that the key facts to be alleged by plaintiffs wishing to invoke the frequent trespass doctrine in a case arising from a railroad accident include the existence of a "beaten" or "well-worn" path, evidence of a constant intrusion on the railroad's property by pedestrians who had a custom of crossing the right-of-way or tracks and evidence that the railroad knew of and tolerated the circumstance. We know from <u>Rodriguez</u> that the doctrine does not impose a duty where the plaintiff alleged only that adults and children "sometimes" used a steep and weedy path to reach the railroad tracks. <u>Rodriguez</u>, 228 Ill. App. 3d at 1027.

The evidence here showed no beaten or well-worn path. No one testified that there were constant intrusions on the right of way or that people had a custom of crossing the tracks to reach the park. The testimony of the Metra and park district witnesses that they were unaware of pedestrian crossings was uncontroverted by plaintiffs. The scant evidence relied on by plaintiffs showed only that the Warren boys "sometimes" took a shortcut that led them across the tracks to the park. Even when viewed in the light most favorable to plaintiffs, the evidence does not support the conclusion that Metra owed Bryanna a duty under the frequent trespass exception.

Plaintiffs next maintain that the trial court erred in relying on the Transportation Law in determining that Metra owed no duty to Bryanna. The Transportation Law provides that "no person may walk, ride, drive or be upon or along the right of way or rail yard of a rail carrier within the State, at a place other than a public crossing." 625 ILCS 5/18c-7503(1)(a)(i) (West 2000). It is undisputed that Bryanna crossed at a place other than a public crossing. She was a

13

trespasser and the Transportation Law applies here. There was no error in the court's finding that the Transportation Law prohibited Bryanna from crossing the tracks.

Plaintiffs also argue that under Nelson, the Tort Immunity Act (745 ILCS 10/3-102(a) (West 2000)) cannot immunize Metra from liability because Bryanna's injury was caused by an activity on the property—the negligent operation of a train—not a condition of the property. This claim was not stated in plaintiffs' complaint and it is argued for the first time on appeal. It is waived. Haudrich, 169 Ill. 2d at 536. Waiver aside, section 3-102(a) of the Tort ImmunityAct provides that a public entity "has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property." 745 ILCS 10/3-102(a) (West 2000).

The existence of a legal duty and the existence of immunity are separate issues. Romine v. Village of Irving, 336 Ill. App. 3d 624, 627, 783 N.E.2d 1064 (2003). The Tort Immunity Act does not impose new duties on a public entity. Romine, 336 Ill. App. 3d at 627. " 'The distinction between an immunity and a duty is crucial, because only if a duty is found is the issue of whether an immunity or defense is available to the governmental entity considered[.]' " Romine, 336 Ill. App. 3d at 627, quoting Zimmerman v. Village of Skokie, 183 Ill. 2d 30, 46, 697 N.E.2d 699 (1998). Here, defendants owed no duty to Bryanna, a trespasser. The immunity question is never reached.

We now turn to plaintiffs' appeal of the order of summary judgment in favor of the park district. Plaintiffs raised no issues as to the park district in their supplemental brief, so our review covers only the issues raised in plaintiffs' first brief. Plaintiffs argue: (1) an issue of fact exists as to whether the dangers of crossing the railroad tracks were open and obvious to Bryanna; (2) an

14

issue of fact exists as to whether the park district acted in a wilful and wanton manner as to the truncated fence; and (3) the park district cannot escape liability under the Tort Immunity Act.

To support their first contention, plaintiffs argue that under Corcoran v. Village of Libertyville, 73 Ill. 2d 316, 325, 383 N.E.2d 177 (1978), a property owner owes a duty of care to children when the owner knows or should know that " 'young children habitually frequent the vicinity' " of a " 'dangerous agency.' " (Emphasis omitted.) Corcoran, 73 Ill. 2d at 325, quoting Kahn v. James Burton Co., 5. Ill. 2d 614, 625, 126 N.E.2d 836 (1955)  In Corcoran, the supreme court found that the plaintiff had not alleged "sufficient relevant facts to describe the condition *** for the trial court to conclude that the condition exposes children to risks greater than those which normally attend their daily lives." Corcoran, 73 Ill. 2d at 328.  See also Benemon v. Soo Line R.R. Co., 294 Ill. App. 3d 85, 96, 689 N.E.2d 366 (1997) (where the parties' submissions did not establish that the defendant knew or should have known that children frequented the area, the plaintiff could not establish a duty of care owed by the defendant).

Here, plaintiffs failed to allege sufficient relevant facts to show that young children habitually frequented the tracks and that the park district knew or should have known that a condition exposed children to a higher than usual risk of injury.

Plaintiffs next allege that a question of fact exists as to whether the park district's actions or inactions were wilful and wanton.  Under section 3-106 of the Tort Immunity Act, a local public entity is immune from liability for injuries on land intended and permitted to be used for recreational purposes unless the plaintiffs can show that wilful and wanton conduct by the entity proximately caused the injury.  745 ILCS 10/3-106 (West 2000).  But "when the plaintiff fails to plead facts or allegations that the landowner engaged in any intentional act or knew of other

injuries or accidents caused by the allegedly dangerous condition, his conduct does not rise to the level of wilful and wanton conduct." Salazar v. Crown Enterprises, Inc., 328 Ill. App. 3d 735, 741, 767 N.E.2d 366 (2002). Plaintiffs have not pled facts to show that the park district was responsible for the fence that Bryanna and her uncles circumvented. Nor did the park district have an obligation to install a fence to barricade its property from the railroad right-of-way. Foreman v. Consolidated Rail Corp., 214 Ill. App. 3d 700, 708, 574 N.E.2d 178 (1991) ("to impose a duty on a municipality to erect fences on all land adjacent to railroad property would be intolerable").

Finally, plaintiffs claim that the park district cannot escape liability under the Tort Immunity Act. 745 ILCS 10/3-102(a) (West 2000). We rely on our earlier analysis of this issue: the question of immunity does not arise unless it has been shown that there is a duty owed. Romine, 336 Ill. App. 3d at 627. The Tort Immunity Act does not impose duties but only confers immunities. McCuen v. Peoria Park District, 245 Ill. App. 3d 694, 698-99, 615 N.E. 2d 764 (1993). Summary judgment in favor of the park district was appropriate.

The judgment of the circuit court is affirmed.

Affirmed.

McBRIDE, P.J., and GARCIA, J., concur.