THIRD DIVISION
AUGUST 1, 2007

No. 1-05-4139

JEAN WARE, Independent Administrator of the Estate of ) 
Kelly McKinnel, Deceased, *et al.*, ) Appeal from the
 ) Circuit Court of
Plaintiffs-Appellants, ) Cook County.
 )
v. )
 )
THE CITY of CHICAGO, a Municipal Corporation, ) No. 03 L 8085
 )
Defendant-Appellee, )
 )
(L.G. PROPERTIES COMPANY; PHILIP J. PAPPAS ) The Honorable
RESTORATION SPECIALISTS, LLC; ) Jeffrey Lawrence,
GEORGE KOUTROUMBIS; and JACK EMERY, ) Judge Presiding.
 )
Defendants).

JUSTICE GREIMAN delivered the opinion of the court:

This case appears before us on interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), following the supreme court's supervisory order directing this court to consider those questions certified by the circuit court in light of DeSmet v. County of Rock Island, 219 Ill. 2d 497 (2006).

As a result of the June 2003 Lincoln Park porch collapse, plaintiffs Jean Ware, as independent administrator of the estate of Kelly McKinnell, deceased, *et al.*, filed the underlying consolidated negligence complaints against defendant City of Chicago. The circuit court denied the City's subsequent motion to dismiss those complaints; however, it certified the following three questions, which we review on appeal: (1) whether the trial court erred in holding that plaintiffs stated a legally sufficient claim that the City breached a duty to them when its inspectors allegedly

1-05-4139

committed acts or omissions in the execution or enforcement of the City's building code which amounted to willful and wanton conduct; (2) whether the trial court erred in holding that the plaintiffs' claims were not barred by sections 2-103, 2-205, 2-105 and 2-207 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2002)); and (3) whether the trial court erred in holding that a triable issue of fact exists as to whether the failure of the City's inspectors to issue violation notices for the porch at 713 West Wrightwood constituted willful and wanton conduct.

The facts underlying this case surround the widely publicized porch collapse that occurred on June 28, 2003, resulting in 13 deaths and injuries to many others. At approximately 12:30 a.m., the back porch of the third-floor apartment located at 713 West Wrightwood, Chicago, Illinois, collapsed onto the second-floor porch, which subsequently collapsed onto the first-floor porch. At the time, the tenants of the second- and third-floor apartments of the privately owned three-flat building were hosting a party and guests were located on the attached porches.

Nearly 40 of the decedents' estates and injured persons filed negligence complaints, which were consolidated for purposes of pretrial motions, against the building owners, building managers and the City of Chicago.[1] In relevant part, the plaintiffs claimed, *inter alia*, that the City's acts or omissions regarding inspection of the subject porch constituted willful and wanton misconduct, thereby violating the City's duty to them. Collectively, the plaintiffs specifically alleged that the City failed to:

"a. inspect the porch adequately, for Building Code violations, for deviations from

---

[1]The building owners and managers are not parties to the instant appeal.

-2-

ordinary and customary construction practices;

      b.  train inspectors to identify Building Code violations or deviations from ordinary and customary construction practices;

      c.  supervise inspectors to ensure identification of Building Code violations or deviation from ordinary and customary construction practices;

      d.  employ qualified inspectors;

      e.  discover that the porch had been built without a permit;

      f.  ensure that Building Code standards were followed;

      g.  provide sufficient time for an effective inspection; and

      h.  end personal relationships with building owners that permitted custom and practice of passing noncompliant buildings as compliant."

In response, the City filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2002)), arguing that it owed plaintiffs no duty under the public duty rule, or, in the alternative, that it was immune from liability pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2002)).

During the hearing on defendant's motion to dismiss, the plaintiffs additionally argued that the porch, which was built without a permit in 1998, did not comply with Chicago building code requirements because it did not have anchored support beams; the porch's square footage was excessive; it did not have an adequate live load capacity; and it was built with an unacceptable grade of wood. Plaintiffs further alleged that at least two inspectors visited the building on

1-05-4139

separate occasions after the porch was built; however, neither inspector reported these, or any other, violations. The circuit court ultimately denied the City's motion to dismiss. Relying on Doe v. Calumet City, 161 Ill. 2d 374 (1994), *overruled on other grounds*, In re Chicago Flood Litigation, 176 Ill. 2d 179 (1997), and subsequent appellate court decisions,[2] the circuit court determined that section 2-202 of the Tort Immunity Act (745 ILCS 5/2-202 (West 2002)) created an exception to the public duty rule and operated as an exception to those immunity provisions advanced by the City. In other words, the circuit court found that plaintiffs sufficiently stated a claim that, despite the public duty rule, the City owed them a duty to refrain from willful and wanton conduct in the execution or enforcement of a law, and that the City was not immune from its duty pursuant to section 2-103, 2-205, 2-105 or 2-207 of the Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2002)). Further, in its written order, the court expressed that Michael Brennan's and Henry Thomas's deposition testimony disclosed facts constituting willful and wanton conduct. Specifically, both inspectors testified at their depositions that "they knew the Building Code required porches to be supported by lookouts, that the absence of lookouts was a violation which they were required to note in their reports, and that a porch without lookouts was in danger of collapse."

Despite its finding, the circuit court subsequently granted the City's motion requesting that it certify the previously noted questions[3] for interlocutory appeal pursuant to Rule 308 because

---

[2]Fatigato v. Village of Olympia Fields, 281 Ill. App. 3d 347 (1996), and Ozik v. Gramins, 345 Ill. App. 3d 502 (2003).

[3]The circuit court certified the third question on its own, absent a request by either party.

1-05-4139

the court's opinion involved questions of law upon which substantial ground for differences of opinion existed. See 155 Ill. 2d R. 308. This court initially denied the City's petition for leave to appeal; however, the supreme court subsequently entered a supervisory order directing this court to vacate our initial denial and consider the petition in light of DeSmet.[4] Accordingly, we granted the City's Rule 308 application.

We review the legal questions presented on interlocutory appeal *de novo*. Bajalo v. Northwestern University, 369 Ill. App. 3d 576, 580 (2006).

We first provide a backdrop for the legal premises applicable to the instant case. In 1965, the legislature enacted the Tort Immunity Act, replacing the previously abolished doctrine of sovereign immunity (see Molitor v. Kaneland Community Unit District No. 302, 18 Ill. 2d 11 (1959)), to protect local public entities and public employees from liability resulting from the operation of government. DeSmet, 219 Ill. 2d at 505, citing Zimmerman v. Village of Skokie, 183 Ill. 2d 30, 43 (1998). The purpose of enacting the Tort Immunity Act was to ensure that public funds were not dissipated by private damage awards. DeSmet, 219 Ill. 2d at 505; see 745 ILCS 10/1-101.1(a) (West 2002). Thereafter, the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, §4) reserved for the legislature the ultimate authority to determine whether local units of government were immune from liability in tort. DeSmet, 219 Ill. 2d at 506.

It is well established that the Tort Immunity Act does not impose new duties on a public entity; rather, it merely confers immunities and defenses. See 745 ILCS 10/1-101.1(a) (West 2002); see also Village of Bloomingdale v. CDG Enterprises, Inc., 196 Ill. 2d 484, 490 (2001)

---

[4]The supreme court also denied the City's petition for leave to appeal.

1-05-4139

(and cases cited therein); Vega v. Northeast Illinois Regional Commuter R.R. Corp., 371 Ill. App. 3d 572, 582-83 (2007). Accordingly, the existence of a duty and the existence of an immunity are distinct issues that must be analyzed separately. Village of Bloomingdale, 196 Ill. 2d at 490, citing Barnett v. Zion Park District, 171 Ill. 2d 378, 388 (1996). The Tort Immunity Act implicitly recognizes duties existing at common law; therefore, we may look to the common law to determine whether a public entity owes a duty. Village of Bloomingdale, 196 Ill. 2d at 490. However, once a duty is found, we must rely on the Tort Immunity Act to determine whether the entity is liable for breach of that duty. Village of Bloomingdale, 196 Ill. 2d at 490.

Another important legal premise implicated in the instant appeal is the common law public duty rule, which generally establishes that "a municipality or its employees [are] not liable for failure to supply general police or fire protection." Huey v. Town of Cicero, 41 Ill. 2d 361, 363 (1968). This court has since determined that "there is no common law duty to the general public for a municipality's failure to enforce an ordinance or building code." Millerick v. Village of Tinley Park, 272 Ill. App. 3d 738, 740 (1995). The policy supporting the rule is that a municipality's duty is to protect the well-being of the community at large and not specific members of the public. Zimmerman, 183 Ill. 2d at 44.

The supreme court recently recognized the public duty rule in DeSmet, the case which this court was directed to consider in reviewing the case at bar. Although it ultimately declined to resolve the full extent of the rule's applicability by assuming the municipality at issue owed a duty in order to resolve the ultimate question of immunity, the supreme court engaged in a discussion regarding the existence of the rule in light of viable case law. DeSmet, 219 Ill. 2d at 506-09. The

supreme court acknowledged that, in <u>Zimmerman</u> and <u>Huey</u>, it previously concluded that the public duty rule survived the abolition of sovereign immunity and the enactment of the Tort Immunity Act. <u>DeSmet</u>, 219 Ill. 2d at 506. However, the court further decided, based on its prior comments in <u>Aikens v. Morris</u>, 145 Ill. 2d 273, 278 n.1 (1991), that the public duty rule had been incorporated into the Tort Immunity Act *vis-á-vis* section 4-102 (745 ILCS 10/4-102 (West 2002)), which immunizes a municipality and its employees for failing to provide police protection. <u>DeSmet</u>, 219 Ill. 2d at 508-09. Accordingly, a careful reading of <u>DeSmet</u> demonstrates that the supreme court recognized that the public duty rule had been codified only within the limited confines of those police protection services immunized by section 4-102. <u>DeSmet</u>, 219 Ill. 2d at 508-09 ("[t]his court's comments in <u>Aikens</u> suggest *** that the public duty rule, at least in this context, has been incorporated into the Tort Immunity Act as an 'immunity' ").

Additionally, because the supreme court's findings in <u>Doe</u> and <u>DeSmet</u> play an important role in the instant decision, we believe it is necessary to provide the facts of those cases. One of the immunities at issue in both <u>Doe</u> and <u>DeSmet</u>, and also at issue in the case at bar, is section 2-202 of the Tort Immunity Act, which posits:

> "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2002).

In <u>Doe</u>, Jane Doe was sexually assaulted and threatened by an intruder in her apartment, as her two children looked on. <u>Doe</u>, 161 Ill. 2d at 381. Jane eventually ran outside of the apartment; however, the intruder followed, beat and again threatened her. <u>Doe</u>, 161 Ill. 2d at

1-05-4139

381. Jane escaped, but the intruder locked himself and her children inside the apartment. Doe, 161 Ill. 2d at 381. Jane's neighbors called 911, and, after several officers arrived on the scene, she described what had occurred to Officer Horka, informing him that her children were still in danger inside the apartment. Doe, 161 Ill. 2d at 381-82. Despite Jane and her neighbors' repeated requests, Officer Horka refused to break down the locked door because he did not want to be responsible for the property damage. Doe, 161 Ill. 2d at 382. Jane assured Officer Horka that she would pay for any resulting damage, but he refused. Doe, 161 Ill. 2d at 382. As a result, Jane attempted to rescue her children herself, but several officers restrained her. Doe, 161 Ill. 2d at 382. Jane's neighbors were also prevented from attempting to break down the door. Doe, 161 Ill. 2d at 382.

Officer Horka continued to refuse to enter the apartment despite direct orders from his supervisor; knowledge that both the rear balcony window and door were ajar; and an offer by paramedics for a "lock pick," locksmith and ladder. Doe, 161 Ill. 2d at 382-83. Instead, Officer Horka rudely questioned Jane; attempted to obtain a key from the landlord; and rang the front door bell. Doe, 161 Ill. 2d at 382-83. Eventually, an investigator arrived on the scene; entered the apartment through the unlocked rear door; and discovered the intruder raping Jane's daughter. Doe, 161 Ill. 2d at 383. During the time while Officer Horka was outside, the intruder repeatedly raped Jane's daughter; forced her to perform deviate sexual acts; and chocked and threatened her son. Doe, 161 Ill. 2d at 383. The supreme court held that, where the complaint repeatedly stated that he was in control of the entire crime scene, including the actions of the other officers, a rational trier of fact could find that Officer Horka's conduct was willful and wanton, thereby

-8-

1-05-4139

excepting him from immunity. Doe, 161 Ill. 2d at 390-91.

Conversely, in DeSmet, an anonymous caller reported that a vehicle ran into a ditch adjacent to a road, and although the information was passed between several public employees in two different counties, no one responded. DeSmet, 219 Ill. 2d at 500-02. The supreme court ultimately determined that the implicated government entities and employees were immune from liability and did not engage in willful and wanton conduct. DeSmet, 219 Ill. 2d at 521. The court expressly distinguished the facts of DeSmet from Doe, where: (1) the police did not respond to the scene; (2) if the police had responded to the scene, they would not have been enforcing or executing a law; and (3) the police did not exert control over the scene and therefore did not alter the circumstances, for better or worse. DeSmet, 219 Ill. 2d at 520-21.

Keeping these principles in mind, we now turn to the first question certified by the circuit court, namely, whether it was correct in determining that plaintiffs stated a legally sufficient claim that the City breached a duty owed to them. In denying the City's motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2002)), the trial court was required to accept all well-pled facts as true and draw all reasonable inferences in favor of plaintiffs to find that their consolidated complaint sufficiently established a cause of action upon which relief could be granted. See King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 11-12 (2005). Relying on Doe and its progeny, plaintiffs now argue that the trial court correctly determined that the City owed them a duty because the public duty rule has become embodied in the Tort Immunity Act, and therefore willful and wanton conduct is a basis for liability pursuant to section 2-202. The City responds that the Tort Immunity Act does not create an exception to the public duty rule for

-9-

1-05-4139

willful and wanton conduct, and therefore the trial court erred in its finding.

We determine that, while we certainly do not condone the City's behavior related to the inspection of the subject porch, defendant did not owe the individual plaintiffs a duty to protect them against its collapse. We are not persuaded by plaintiffs' attempt to create a new basis of liability for willful and wanton conduct by relying on section 2-202 of the Tort Immunity Act, which, as previously defined, excepts from immunity willful and wanton conduct by a public employee in the execution or enforcement of any law. See 745 ILCS 10/2-202 (West 2002). Primarily, we note that the provision explicitly addresses *public employees*, not government entities such as the City, and no individual City employee has been named as a defendant. See 745 ILCS 10/2-202 (West 2002).

Notwithstanding, there is no such duty at common law (see Sparks v. Starks, 367 Ill. App. 3d 834, 838 (2006)) and, as previously announced, the Tort Immunity Act does not create new bases for liability. Village of Bloomingdale, 196 Ill. 2d at 490. Rather, willful and wanton conduct is only considered, after we have first found that the plaintiff is owed a duty by the municipality, in analyzing whether it is liable for breach of that duty or whether it is immune under the Tort Immunity Act. See Village of Bloomingdale, 196 Ill. 2d at 490. Consequently, plaintiffs cannot rely on the language of section 2-202 of the Tort Immunity Act to fashion a common law duty. Accordingly, we answer the first certified question in the affirmative and conclude that the circuit court erred in finding that plaintiffs stated a legally sufficient claim that the City owed them a duty to protect against the inspectors' willful and wanton conduct.

Although failure to sufficiently plead a legal duty defeats plaintiffs' negligence claims,

assuming, *arguendo*, that the City owed them a duty, we consider the next question certified by the circuit court. The second certified question asks whether the circuit court erred in holding that plaintiffs' claims were not barred by sections 2-103, 2-205, 2-105 and 2-207 of the Tort Immunity Act. In denying the City's motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2002)), the trial court determined that some affirmative matter, namely, the immunities advanced, did not defeat plaintiffs' claim. See King, 215 Ill. 2d at 12.

When interpreting an immunity provision, we must ascertain and give effect to the legislature's intent by relying on the language used in the Tort Immunity Act, construing each word in its context and ensuring that no term is rendered superfluous or meaningless. DeSmet, 219 Ill. 2d at 509-10. The legislature, and not this court, has the exclusive authority to extend the existing immunities; therefore, where the language of the immunity is clear and unambiguous, we may not read into it exceptions, limitations or conditions not expressly described by the plain language of the immunity, even if its application is seemingly unjust or inappropriate. DeSmet, 219 Ill. 2d at 510.

According to section 2-105 of the Tort Immunity Act:

"A local public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its own, to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2-105 (West 2002).

Moreover, section 2-207 of the Tort Immunity Act provides:

"A public employee is not liable for an injury caused by his failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than that of the local public entity employing him, for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2-207 (West 2002).

Further, sections 2-103 and 2-205 of the Tort Immunity Act state that local public entities and public employees are "not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103 (West 2002); see 745 ILCS 10/2-205 (West 2002).

Plaintiffs contend that their claims are not barred by the Tort Immunity Act because those provisions advanced by the City do not provide blanket immunity and section 2-202, excepting willful and wanton conduct, applies to the instant case. Defendant responds that sections 2-105, 2-207, 2-103 and 2-205 of the Tort Immunity Act squarely apply here and provide unqualified immunity. Defendant further argues that section 2-202 of the Tort Immunity Act does not act as an exception to and override the otherwise applicable provisions.

We determine that the City was immunized from liability against plaintiffs' allegations that it failed to properly inspect the porch in question and failed to report that the porch construction violated several building codes. Relying on the clear language of the immunities at issue, we conclude that their application bars plaintiffs' negligence claims against the City.

Plaintiffs argue that sections 2-105 and 2-207 expressly immunize only negligent conduct and therefore the conduct alleged in their complaint, willful and wanton, is not protected. We are

reminded that the legislature has sole authority to extend, limit and condition existing immunities. See DeSmet, 219 Ill. 2d at 510. Indeed, the supreme court cautioned that the plain language of an immunity demonstrates the legislature's intent, such that the legislature will unambiguously immunize negligent conduct, but not willful and wanton conduct, where intended. DeSmet, 219 Ill. 2d at 514; Village of Bloomingdale, 196 Ill. 2d at 491. When no such express exception for willful and wanton conduct appears in the provision, the supreme court has concluded that the legislature intended to provide unqualified immunity. DeSmet, 219 Ill. 2d at 514; Village of Bloomingdale, 196 Ill. 2d at 491. In support of their argument, plaintiffs erroneously read "negligent inspection" out of context and fail to acknowledge that no express exception for willful and wanton conduct appears in the language of section 2-105 or 2-207 of the Tort Immunity Act. DeSmet, 219 Ill. 2d at 510. Accordingly, despite plaintiffs' contention that the City engaged in willful and wanton conduct, those provisions applicable to the instant case, including sections 2-103 and 2-205 of the Tort Immunity Act, immunize the City from liability under the circumstances. See Schlicher v. Board of Fire & Police Commissioners of the Village of Westmont, 363 Ill. App. 3d 869, 877-78 (2006) (finding no exception for willful and wanton conduct in sections 2-103 and 2-205 of the Tort Immunity Act); Glenn v. City of Chicago, 256 Ill. App. 3d 825, 842 (1993), citing Carter v. City of Elmwood, 162 Ill. App. 3d 235, 237 (1987) (finding that the legislature did not except willful and wanton conduct from section 2-205 of the Tort Immunity Act).

Further, we are not persuaded by plaintiffs' argument that section 2-202 of the Tort Immunity Act, excepting willful and wanton conduct from a public employee's enforcement of a

law (745 ILCS 10/2-202 (West 2002)), applies in conjunction with those immunity provisions advanced by the City. Plaintiffs attempt to distinguish this case from DeSmet, in favor of Doe and its progeny. Plaintiffs' attempt, however, cannot succeed where DeSmet limited the supreme court's holding in Doe to the unique facts of that case and further limited the conjunctive interpretation of section 2-202 to section 4-102 of the Tort Immunity Act. DeSmet, 219 Ill. 2d at 515-22. Plaintiffs have not presented, and we are not aware of, any applicable instance where a court has determined that section 2-202 of the Tort Immunity Act should be read in conjunction with the provisions that govern the instant claim. Moreover, sections 2-105 and 2-207 directly address the subject at issue, whereas section 2-202 acts as a more generalized immunity. Compare 745 ILCS 10/2-105, 2-207 (West 2002) with 745 ILCS 10/2-202 (West 2002). The supreme court and this court have determined that when a general provision and a more specific provision both could apply, the provision directly addressing the matter governs. See Murray v. Chicago Youth Center, 224 Ill. 2d 213, 234 (2007); Abruzzo v. City of Park Ridge, No. 1-06-2116, slip op. at 23 (June 22, 2007), citing Moore v. Green, 219 Ill. 2d 470, 480 (2006).

Nonetheless, even if we determined that section 2-202 conjunctively applied, plaintiffs cannot satisfy the requisite elements for its application, as those elements emerged from Doe and were established in DeSmet. See DeSmet, 219 Ill. 2d at 519-20. The supreme court noted that, in order to find an exception to the public duty rule for willful and wanton conduct, the complaint must establish that: (1) the municipality was uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) specific acts or omissions by the municipality occurred; (3) the specific acts were willful in nature; and (4) the injury occurred while the plaintiff was under the

1-05-4139

direct and immediate control of municipal employees. DeSmet, 219 Ill. 2d at 519-20, citing Doe, 161 Ill. 2d at 386 (noting that, although the special duty doctrine cannot override statutory immunities, "a fact-specific application of section 2-202 *** bears some striking [similarity] to an application of the special duty exception to the public duty rule"). The Tort Immunity Act further defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2002).

We conclude, based on the limited facts before this court, that plaintiffs would have a difficult time demonstrating that the City acted willfully and wantonly, as the conduct is defined by the Tort Immunity Act. We further find that plaintiffs cannot establish that they were under the "direct and immediate" control of the City or its inspectors when the porch collapsed. *Cf.* Doe, 161 Ill. 2d at 390-91 (finding that the officer willfully and wantonly exerted control over the scene by failing to rescue the at-risk children from the intruder inside the locked apartment and by further barring the mother, neighbors and other officers from entering the apartment). At oral argument, plaintiffs argued that the control element was satisfied when they alleged that the City inspected the porch; knew that it was not safe; and failed to act. We disagree. Such a broad interpretation is unreasonable as it has the potential of bringing virtually every porch within city limits under the exception, thus rendering the immunity meaningless. Consequently, we also answer the second certified question in the affirmative, and conclude that the circuit court erred in finding that plaintiffs' claims were not barred by sections 2-103, 2-205, 2-105 and 2-207 of the Tort Immunity Act.

-15-

1-05-4139

Finally, we decline to address the circuit court's third certified question because, and the parties agree, its resolution requires a factual analysis, which is outside the scope of Rule 308. See Townsend v. Sears, Roebuck and Co., 368 Ill. App. 3d 902, 906 (2006).

Accordingly, we answer the certified questions in the affirmative and reverse the circuit court's denial of defendant's motion to dismiss.

Reversed.

THEIS, P.J., and CUNNINGHAM, J. concur.