SECOND DIVISION
September 4, 2007

No. 1-06-2342

| | | |
|---|---|---|
| TRUDY BOWLER, as Mother and Guardian of Joshua Bowler, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) | |
| Defendant-Appellee | ) ) ) | Honorable Kathy M. Flanagan, |
| (Charles D. Bleck, Linda L. Chui, Robert Bleck and Bleck & Bleck, a Partnership, Defendants). | ) ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Joshua Bowler was injured when he fell off the roof of a three-story apartment building in Chicago. Plaintiff Trudy Bowler, as Joshua's mother and guardian, filed an action against defendant the City of Chicago (City) asserting the City breached a duty of care to Joshua and acted willfully and negligently when it failed to enforce the building code and issued a permit for construction of access to the roof knowing the proposed construction design violated the City's building code (Chicago Municipal Code §13-4-010, *et seq.* (2004)). The trial court dismissed the complaint against the

City, finding the City immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2006)) (the Tort Immunity Act). Plaintiff appeals, arguing (1) the City is not immune from liability for its willful and wanton conduct in issuing the construction permit, (2) the court erred in finding plaintiff failed to allege wilful and wanton conduct in the City's execution and enforcement of the building code sufficient to plead liability under section 2-202 of the Tort Immunity Act (745 ILCS 10/2-202 (West 2006)), and (3) the common law "public duty" rule does not defeat the City's duty of care to Joshua. We affirm.

## Background

On December 12, 2004, Joshua attended a party held on the roof deck of the three-story residential building at 3444 N. Janssen Street owned by Charles Bleck and Linda Chiu. The deck was on the east side of the building's roof. To reach the raised deck, guests climbed stairs leading from the building's third-floor unit to a penthouse at roof level and then walked across the roof to the deck. The roof had a nine-inch-high parapet wall around it. Joshua was standing at the parapet wall when he fell backwards over the wall to the ground 40 feet below. As a result of the fall, he is now a quadriplegic.

Bleck and Chiu had bought the building in 1996 and started construction of the roof access stairway and penthouse in mid-July 1997. In late July 1997, a building inspector discovered Bleck and Chiu did not have a permit for the construction and ordered the work to cease. On August 14, 1997, the City issued a summons to Bleck

and Chiu, notifying them of building code violations and setting a September 11, 1997, administrative hearing date for the violations. Sometime in August 1997, Bleck submitted an application for a construction permit. He attached blueprints of the proposed roof access construction to his application. A city architectural plan examiner approved the blueprints for issuance of a construction permit. The chief architectural plan examiner also reviewed the blueprints and approved issuance of the permit on August 21, 1997. At the hearing on the code violations, the administrative law judge dismissed the citations against Bleck and Chiu given the City's issuance of the construction permit.

Plaintiff filed an action on Joshua's behalf against Bleck, Chiu, architect Robert Bleck, the architectural firm Bleck & Bleck and the City. Only her claim against the City is at issue here. In plaintiff's second amended complaint, she alleged the roof violated sections 13-124-310, 13-124-320 and 13-124-330 of the City's building code (Chicago Municipal Code §13-124-310, 13-124-320 and 13-124-330 (2004)) because it did not have three-foot-high protective guards around the edge of the roof.[1] She also alleged

---

[1] Chapter 13-124 is titled "Safeguards During Construction--Building Safety Requirements." Section 13-124-310 provides: "Guards to prevent persons from falling shall be provided as required in Sections 13-124-320 and 13-124-330, inclusive." Chicago Municipal Code §13-124-310. Sections 13-124-320 and 13-124-330 provide, in salient part, "[g]uards shall be required at every point of danger including * * * [a]t all

the blueprints Bleck submitted to the City with his application showed these violations; the City's plan examiners knew the safety requirements stated in sections 13-124-310, 13-124-320 and 13-124-330; the plan examiners acted intentionally and recklessly in approving the violation of the code and electing not to enforce the code; building inspectors falsely advised the administrative law judge that they had performed a reinspection of the property and the planned construction and that Bleck and Chui were in compliance with the building code; the City knew no reinspection had taken place and the construction was not in compliance with the code; and the building inspector's reinspection willfully, recklessly and with utter indifference to the safety of the public and plaintiff ignored the blatant omission of the required guarding of the roof and he knew his statement to the administrative law judge that the work was in compliance with the code was not true.

Plaintiff asserted the City had a duty "to refrain from a course of action which either actually, deliberately or with an utter disregard for the safety of the public

---

edges of every floor, balcony, mezzanine or other space used or intended for human occupancy which is at a height of more than two feet above the floor, ground or pavement directly below" (Chicago Municipal Code §13-124-320 (2004)) and "[g]uards may be formed by walls, balustrades, grills or railings not less than three feet, six inches in height, by area gratings or by other approved devices" (Chicago Municipal Code §13-124-330 (2004)).

4

executed documents that approved the construction that violated" sections 13-124-310, 13-124-320 and 13-124-330.  She asserted the City, in breach of this duty, "deliberately, willfully or with a wanton disregard for the safety of the public including plaintiff," participated in the violation of the safety requirements in sections 13-124-310, 13-124-320 and 13-124-330 by executing an order for Bleck's work; executed an administrative order on the basis of a reinspection of the property that recklessly overlooked the existing violation of sections 13-124-310, 13-124-320 and 13-124-330; undertook a reinspection that disregarded the obvious omission of the guarding as required in sections 13-124-310, 13-124-320 and 13-124-330; "chose not to enforce the Chicago Building Code when they knew that the violation posed unreasonable risks of harm to citizens lawfully on the premises"; and/or "authorized the violation of the Chicago Building Code."  She alleged Joshua fell over a noncomplying parapet wall as a direct and proximate result of one or more of the wilful activities.

The City filed a motion to dismiss the second amended complaint pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2006)), arguing that it was immune from liability under sections 2-103, 2-205, 2-104 and 2-105 of the Tort Immunity Act (745 ILCS 10/2-103, 2-205, 2-104, 2-105 (West 2006)).   The court granted the motion to dismiss with prejudice, finding the City immune from liability under sections 2-103 and 2-205 of the Tort Immunity Act and the wilful and wanton exception to immunity from liability provided in section 2-202 of the Tort Immunity Act did not apply.  Plaintiff appeals the court's order dismissing her

suit against the City. The case against the other defendants continues below.

Analysis

The court allowed the motion to dismiss pursuant to section 2-619(a)(9) of the Code. Under section 2-619, a valid cause of action is presumed but barred by an affirmative matter, a defense which negates the plaintiff's cause of action. 735 ILCS 5/2-619(a)(9) (West 2006); *Kedzie & 103d Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 735 (1993). Immunity under the Tort Immunity Act is such an affirmative matter. *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 479, 763 N.E.2d 756, 759 (2002). We review a section 2-619 dismissal *de novo*. *Arteman*, 198 Ill. 2d at 479, 763 N.E.2d at 759. Interpreting all pleadings in the light most favorable to the nonmoving party, we must determine "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103d Currency Exchange, Inc.*, 156 Ill. 2d at 116-17, 619 N.E.2d at 735.

Immunity

In her opening brief, plaintiff argues the court erred in finding the City immune from liability under sections 2-103, 2-205, 2-104 and 2-105. Pursuant to sections 2-103 and 2-205, neither a local public entity (section 2-103) nor an employee of a public entity (section 2-205) is liable for injury caused by adopting or failing to adopt an enactment or by failing to enforce any law. 745 ILCS 10/2-103; 745 ILCS 10/2-205 (West 2006). Pursuant to section 2-104, a local public entity is not liable for an injury

caused by

> "the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked. " 745 ILCS 10/2-104 (West 2006).

Pursuant to section 2-105, a local public entity is not liable for an injury caused by "its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its own, to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2-105 (West 2006). Under the plain and unambiguous language of these sections, it would appear that the City is immune from liability for failing to enforce the building code, issuing the construction permit, negligently inspecting and/or failing to inspect the property.

Plaintiff asserts, however, that the immunities in sections 2-103, 2-205, 2-104 and 2-105 are not blanket immunities because section 2-202 of the Tort Immunity Act excludes immunity for wilful and wanton misconduct by a public employee "in the execution and enforcement of any law" (745 ILCS 10/2-202 (West 2006)). She argues the acts or omissions given immunity in sections 2-103, 2-205, 1-104 and 2-105 were derived from common law negligence and section 2-202 can, therefore, be invoked as an exception to those immunities where wilful and wanton conduct occurred. She

further argues the court erred in dismissing her complaint because she sufficiently alleged that the City acted willfully and wantonly in the execution and enforcement of the law when its inspectors ignored the blatant omission of the guarding, its examiners approved the blueprints on which no guarding was drawn and the City executed the permit, falsely confirming that the proposed work was proper.

This court recently addressed the issue of the City's immunity from liability for its failure to enforce the building code and for performing inadequate inspections in *Ware v. City of Chicago*, No. 1-05-4139 (August 1, 2007). In *Ware*, the plaintiffs sued the City for damages resulting from a porch collapse wherein 13 people died and numerous others were injured. They alleged the City's acts and omissions in the inspecting of the porch and failing to enforce the building code were willful and wanton and violated the City's duty to them. The City moved to dismiss, arguing that it was immune from liability pursuant to sections 2-103, 2-205, 2-105 and 2-207[2] of the Tort Immunity Act. The trial court denied the motion to dismiss, finding that the City was not immune from liability under those sections because section 2-202 created an exception to those immunity provisions and the plaintiffs sufficiently disclosed facts showing wilful and wanton conduct by city building inspectors. The trial court nevertheless granted the City's motion for an interlocutory appeal on three certified questions, including the question of

_____

[2] Section 2-207 is essentially identical to section 2-105 in that it provides immunity to a public employee, rather than to the public entity, for injuries caused by his failure to make or adequately perform an inspection. 745 ILCS 10/2-207 (West 2006).

whether the trial court erred in holding plaintiffs' claims were not barred by sections 2-103, 2-205, 2-105 and 2-207.

Pursuant to a supervisory order from our supreme court, we considered this question in light of *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 848 N.E.2d 1030 (2006), and determined that the City was immunized against plaintiffs' allegations pursuant to sections 2-103, 2-205, 2-105 and 2-207 and section 2-202 did not operate to create a wilful and wanton exception to those immunities. *Ware*, slip op. at 15.

In *DeSmet*, our supreme court held that the plain language of an immunity demonstrates the legislature's intent and, where no express exception for wilful and wanton conduct appears in a provision, the legislature intended to provide unqualified immunity. *Ware*, slip op. at 13, citing *DeSmet*, 219 Ill. 2d at 514. The clear and unambiguous language in sections 2-103, 2-205, 2-105 and 2-207 does not provide an express exception for wilful and wanton conduct. Accordingly, following *DeSmet*, we determined that the City is immunized from liability under the circumstances specified in those sections, *i.e.*, for failure to enforce a law or perform an adequate inspection. *Ware*, slip op. at 13.

We rejected the plaintiffs' argument that section 2-202 applies in conjunction with sections 2-103, 2-205, 2-105 and 2-207. *Ware*, slip op. at 14. Section 2-202 provides "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2006). However, our supreme court in *DeSmet*

limited the conjunctive applicability of the wilful and wanton exception in section 2-202 to section 4-102 of the Tort Immunity Act and the unique facts present in *Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498 (1974). *Ware*, slip op. at 14, citing *DeSmet*, 219 Ill. 2d at 515-22.

In *Doe*, a police officer took control of a crime scene and repeatedly prevented rescuers from entering an apartment wherein an intruder had locked himself and was repeatedly raping a young girl and threatening her brother. The officer knew the danger the children were in because the children's mother had been raped by the intruder and, having managed to escape the apartment, had called the police to help rescue her children. Although section 4-102 of the Tort Immunity Act immunizes a municipality and its employees for failing to provide police protection (745 ILCS 10/4-102 (West 2006)), *Doe* held that section 2-202 could be read in conjunction with section 4-102 because the officer was executing and enforcing the law when he took control of the entire crime scene. *Doe*, 161 Ill. 2d at 390-91, 641 N.E.2d at 506. Whether his conduct was wilful and wanton such that he was excepted from immunity was a question for a jury. *Doe*, 161 Ill. 2d at 390-91, 641 N.E.2d at 506.

In *DeSmet*, an anonymous caller reported seeing a car in a ditch but police and rescue personnel failed to respond to the scene of the accident and the driver of the car died. The supreme court held that its decision in *Doe* was inapplicable under the circumstances present in *DeSmet* because the police's failure to respond to the scene of the accident did not constitute an act or course of conduct in the execution or

enforcement of the law nor control over the scene such that, as happened in *Doe*, the status quo was altered to the detriment of others. *DeSmet*, 219 Ill. 2d at 518-21, 848 N.E.2d at 1044-45. It held section 2-202 inapplicable as an exception to section 4-102 because the defendants in *DeSmet* "were not executing or enforcing the law and they did not exercise control over [the injured party, the driver]" as in *Doe*, and, therefore, the plain language of section 4-102 immunized the defendants under the facts of the case. *DeSmet*, 219 Ill. 2d at 518-21, 848 N.E.2d at 1044-45.

Because the supreme court so limited the applicability of section 2-202 to the facts and ordinance at issue in *Doe*, we determined that section 2-202 could not be read in conjunction with sections 2-103, 2-205, 2-105 and 2-207. *Ware*, slip op. at 14. We further noted that there were no other cases in which a court determined that section 2-202 should be read in conjunction with sections 2-103, 2-205, 2-105 and 2-207 and that sections 2-105 and 2-207 directly address the City's liability for negligent inspection while section 2-202 is merely a generalized immunity and, when both a specific and general provision apply to a situation, the specific provision governs over the general one. *Ware*, slip op. at 14. Accordingly, we held that plaintiffs' claims were not barred by sections 2-103, 2-205, 2-105 and 2-207.

Given our decision in *Ware* and the supreme court's decision in *DeSmet*, we hold that section 2-202 cannot be read in conjunction with the sections at issue here, sections 2-103, 2-205, 2-104, and 2-105. *Ware* dealt directly with sections 2-103, 2-205 and 2-105. Therefore, beyond noting that neither the outrageous circumstances

present in *Doe* nor section 4-102 is at issue here, we need not belabor section 2-202's applicability to sections 2-103, 2-205 and 2-105. We find similarly that section 2-202 cannot be read in conjunction with section 2-104 to create an exception to the immunity section 2-104 provides for issuance of a permit. Again, neither the circumstances nor the ordinance at issue in *Doe* is at issue here. Further, as is section 2-105, section 2-104 is a specific provision. It directly addresses the City's immunity for issuance of the work permit and, therefore, it governs over the more general immunity stated in section 2-202. *Ware*, slip op. at 14. Accordingly, the City is immune from liability pursuant to sections 2-103, 2-205, 2-104 and 2-105.

Further, as the City points out, plaintiff did not allege Joshua was injured because City employees acted willfully and wantonly in executing or enforcing the law. Rather, she alleged Joshua was injured because the City failed to enforce the law. To quote plaintiff's second amended complaint: the City

"deliberately, willfully or with a wanton disregard for the safety of the public including plaintiff undertook one or more of the following activities:

a) participated in the violation of [the sections 13-124-310, 13-124-320 and 13-124-330 safety requirements] by executing an order for Bleck's work;

b) executed an administrative order on the basis of a re-inspection of the property that recklessly overlooked the violation of [sections 13-124-310, 13-124-320 and 13-124-330] that existed [;]

c) undertook a reinspection that disregarded the obvious, patent

12

omission of the guarding as set forth in [sections 13-124-310, 13-124-320 and 13-124-330;]

   d)  chose not to enforce the Chicago Building Code when they knew that the violation posed unreasonable risks of harm to citizens lawfully on the premises;

   e)  authorized the violation of the Chicago Building Code".

None of these allegations accuse the City or any of its employees of executing or enforcing a law.  Indeed, allegation (d) asserts the City "chose not to enforce" a law, the building code.

Plaintiff argues that she is not claiming "failure to enforce the building code but rather wilful and wanton conduct in the enforcement of the building code by carving out an exception that does not and has never existed."  Carving out an exception means nothing more than that the City declined to enforce the building code for some reason. Her claim comes down to the same thing: the City and its employees did not enforce the building code, whether through approval of the blueprints, approval of the construction permit, overlooking obvious violations on reinspection, entering an order for the permit or allowing Bleck and Chui to construct the roof access.  Enforcement of the building code entails requiring violators of the code to comply with the code or pay a penalty, whether through fines, work stoppage or denial or revocation of permits.  It does not entail doing nothing, as plaintiff alleges the City and its employees did here. Accordingly, as the trial court held, her claims do not fall within the immunity exception

stated in section 2-202, even if it was applicable.

In her reply brief on appeal, plaintiff asserts the City misunderstood and mischaracterized her pleading and, for the first time on appeal, states that sections 2-103, 2-205 and 2-104 do not bar her claims because they have no applicability in this case. She asserts that section 2-103 is inapplicable because her claim is not that Joshua was injured because the City enacted the guardrail provision nor that the City failed to enforce its building code requirement for a guardrail; section 2-205 is inapplicable because she is not claiming a public employee failed to enforce a law; and section 2-104 is inapplicable because she is not asserting that the City issued a permit for the building of access to the roof or that the permit was wrongfully issued for the construction undertaken. She also states that, if she was claiming that the City is liable because it failed to make an inspection or that its inspection was inadequate or negligent, section 2-105 would be inapplicable.

She argues that her claim, rather, is that the reinspection was a lie; the lie was perpetrated by the finding of the administrative law judge who issued the order for the permit; it is the administrative law judge's responsibility to uphold the law; and the administrative law judge knowingly executed an order that permitted issuance of a permit based on a lie, thereby acting willfully and wantonly in enforcing the law and invoking the exception from immunity in the execution or enforcement of any law provided in section 2-202. This is an entirely new argument.

The City did not misunderstand plaintiff's pleading. The claims she says she is

not pleading are exactly the claims she did plead in her second amended complaint and reasserted in her opening brief. Moreover, nowhere in her second amended complaint did plaintiff argue that the administrative law judge's order for issuance of the permit, allegedly made with the knowledge that there had been no reinspection notwithstanding the building inspectors assertions to the contrary, was a wilful and wanton execution of the law exempt from immunity pursuant to section 2-202. Nowhere in her opening brief did she argue the trial court overlooked such a claim. In fact, nowhere in her opening brief did she state sections 2-103, 2-205, 2-104 and 2-105 were inapplicable. Issues raised for the first time in an appellant's reply brief are deemed waived on appeal (188 Ill.2d R. 341(e)(7), unless responsive to an argument raised in the appellee's brief. *People v. Brownell*, 123 Ill.App.3d 307, 319, 462 N.E.2d 936, 945-46 (1984). Such is not the case here and we decline to address the argument.

Because we find the City immune from liability in this case, we need not address plaintiff's argument that regarding the applicability of the public duty rule.

For the reasons stated above, we affirm the decision of the trial court.

Affirmed.

THEIS and CUNNINGHAM, JJ., concur.