FIFTH DIVISION
May 16, 2008


No. 1-05-1954

|  |  |
|---|---|
|  | ) Appeal from the |
| JESSE ANTHONY, Special Administrator | ) Circuit Court of |
| of the Estate of Nita Anthony, Deceased, *et al.*, | ) Cook County |
|  | ) |
| Plaintiffs-Appellees, | ) No. 03 L 2348 |
|  | ) Master Complaints |
|  | ) |
| v. | ) (cons. 03 L 1951, 03 L 2048, 03 L 2055, |
|  | ) 03 L 2077, 03 L 2078, 03 L 2202, 03 L |
|  | ) 2258, 03 L 2320, 03 L 2323, 03 L 2348, |
| THE CITY OF CHICAGO, | ) 03 L 2376, 03 L 2449, 03 L 2513, 03 L |
|  | ) 2514, 03 L 2517, 03 L 2561, 03 L 2614, |
| Defendant-Appellant | ) 03 L 2741, 03 L 2770, 03 L 3036, 03 L |
|  | ) 3267, 03 L 5982, 03 L 6310, 03 L 6608, |
|  | ) 03 L 6715, 03 L 7126, 03 L 7171, 03 L |
| (LeMirage Studio, Ltd., d/b/a Club E2; | ) 7734, 03 L 8025, 03 L 8026, 03 L 9095, |
| LeMirage All-Night Studio, Inc., d/b/a Club E2; | ) 03 L 11007, 03 L 11376, 03 L 11377, 03 |
| The Clique, Ltd., d/b/a Club E2; Lesly Motors, | ) L 11616, 03 L 14625, 04 L 459, 04 L 860, |
| Inc.; Lesley Benodin; Dwain Kyles; Calvin | ) 04 L 1405, 04 L 1592, 04 L 1631, 04 L |
| Hollins; Team One Security; Envy Productions | ) 1633, 04 L 1641, 04 L 1657, 04 L 1798, |
| & Entertainment Company, Inc.; Marco Flores; | ) 04 L 1813, 04 L 1815, 04 L 1816, 04 L |
| Vaughn Woods; Clear Channel | ) 1818, 04 L 1865, 04 L 1887, 04 L 5170, |
| Communications, d/b/a WGCI; and Ira Navarro; | ) 04 L 11861, 05 L 1148, 05 L 1441, 05 L |
|  | ) 1836, 05 L 1967, 04 M1 300659, 05 M1 |
| Defendants). | ) 300395, 05 M1 300675) |
|  | ) |
|  | ) Honorable |
|  | ) Kathy M. Flanagan |
|  | ) Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

This case appears before us on interlocutory appeal pursuant to Supreme Court Rule 308

(155 Ill. 2d R. 308) to consider the questions certified by the circuit court.

As a result of a disturbance in February 2003 on the second floor of a nightclub and the ensuing pileup in the stairwell as patrons attempted to flee the nightclub, plaintiffs Jesse Anthony, as special administrator of the estate of Nita Anthony, deceased, *et al.*, filed the underlying consolidated wrongful death and personal injury actions against multiple defendants, including the nightclub's owners, operators, security providers and personnel, and the City of Chicago (City). The circuit court denied the City's subsequent motion to dismiss the complaint; however, it certified the following three questions for review on interlocutory appeal:

(1) Do allegations that the City, a municipality, engaged in conduct that was willful and wanton in failing to enforce laws or court orders or in failing to rescue, as set forth in plaintiffs' master complaints, create a duty to persons allegedly injured by the failure to enforce the laws or court orders and the failure to rescue?

(2) Does section 2-202 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-202 (West 2006)) constitute an exception to the absolute immunity for failure to enforce any law under section 2-103 of the Act (745 ILCS 10/2-103 (West 2006)), or to the absolute immunity for failure to provide adequate police protection or police service under section 4-102 of the Act (745 ILCS 10/4-102 (West 2006))?

(3) Do codefendants' violations of public safety laws and court orders constitute an intervening cause that breaks the causal chain between the City's failure to enforce laws or court orders and plaintiffs' injuries in this case?

For the reasons that follow, we answer the second certified question in the negative. We find it unnecessary to answer the first and third certified questions because our answer to the second certified question is dispositive of the first and third questions.

BACKGROUND

In May 2002, the City filed a complaint against the building owners of the property located at 2347 South Michigan Avenue in Chicago, where the Epitome Restaurant and Nightclub, d/b/a E2 Nightclub (Club), was located. The City, through the commissioner of the department of buildings and based upon reports from department inspectors, determined the building was unsafe. The complaint cited the building owners for failure to provide adequate exits for patrons on the ground level and failure to provide sufficient exits for patrons on the second floor.

On July 19, 2002, the circuit court entered an order prohibiting occupancy of the Club's second floor. That order was reentered by the court on August 9, 2002, September 6, 2002, and October 25, 2002.

On February 17, 2003, hundreds of patrons were at the Club when a disturbance broke out on the second floor. During the disturbance, security guards used mace or pepper spray, which prompted many patrons to attempt to flee. A crowd of patrons packed into a stairwell, and many of them were injured or killed during the ensuing pileup.

Over 20 decedents' estates filed wrongful death actions and over 30 of the injured patrons brought personal injury actions against the defendants. The trial court consolidated those actions and directed plaintiffs to draft two master complaints, one for wrongful death and one for

1-05-1954

personal injury.

In relevant part, the plaintiffs claimed that the City's acts or omissions regarding the continued operation of the Club and failure to extricate trapped patrons constituted willful and wanton conduct, thereby violating the City's duty to them. Specifically, the plaintiffs alleged that the City had actual notice and knowledge that the Club posed an immediate hazard to patrons, was structurally unsafe, lacked adequate exits, and operated in violation of occupancy limits, municipal ordinances and court orders. Plaintiffs alleged that, despite such knowledge, the City allowed an excessive number of people to enter and gather in the building, allowed the Club to openly operate, and undertook the police duty of crowd control but failed to timely and properly extricate patrons trapped in the stairwell.

In response, the City filed a motion to dismiss pursuant to sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2006)), arguing that, under the public duty rule, it owed no duty of care to individual members of the public to provide governmental services, including police and fire protection. In the alternative, the City argued it was immune from liability pursuant to the Act (745 ILCS 10/1-101 *et seq.* (West 2006)). Specifically and relevant to this appeal, the City relied upon: (1) section 2-103 of the Act, which immunizes local public entities from liability for injuries caused by failing to enforce a law; and (2) section 4-102 of the Act, which immunizes local public entities from liability for failing to provide adequate police protection or service. The City also argued that the conduct of the Club's owners and operators, not the conduct of the City, was the proximate cause of plaintiffs' injuries and the decedents' deaths.

4

1-05-1954

The circuit court denied the City's motion to dismiss. Concerning the public duty rule, the court ruled that a statutorily created exception to the public duty rule subjects municipalities to a duty to persons injured by willful and wanton conduct in the enforcement and execution of laws. The court found that plaintiffs' allegations could constitute a basis to find that the City engaged in willful and wanton conduct in the execution and enforcement of laws and, thus, subject the City to a duty. Specifically, the court reasoned that the alleged actions of the police officers who responded to the scene and the City's action initiating housing court proceedings could be construed as enforcing and executing laws.

Concerning immunity under the Act, the court found that section 2-202 of the Act, which immunizes acts or omissions in the enforcement of laws but contains an exception for willful and wanton conduct, prevailed over sections 4-102 and 2-103 of the Act, which immunize both negligent and willful and wanton conduct. Applying section 2-202, the court concluded that the City was not immune from liability for plaintiffs' claims that the City engaged in willful and wanton conduct in the execution and enforcement of laws and providing police protection.

Concerning proximate cause, the court found that plaintiffs' injuries were foreseeable under the circumstances alleged and, thus, concluded that there was a question of fact regarding whether the City's conduct was a proximate cause of those injuries.

Thereafter, the court entered an order certifying the previously noted questions for interlocutory appeal pursuant to Rule 308 because the court's opinion involved questions of law upon which substantial ground for differences of opinion existed.

5

1-05-1954

Following the trial court's denial of the City's motion to dismiss, the trial court allowed plaintiffs to amend the master complaints to add the following allegation:

"Upon information and belief, as patrons filed down the stairwell from the second floor and attempted to exit through the glass front doors of the premises, the doors were jammed, closed and locked by an unknown Chicago police officer which caused or contributed to a pile up of the patrons at the bottom of the staircase."

During oral argument before this appellate court, the parties confirmed that this amendment to plaintiffs' allegations was not at issue as part of the questions certified for interlocutory appeal. The City conceded that the amended allegation was not subject to the public duty rule, immunity and proximate cause arguments raised by the City concerning the other allegations in the master complaints. The City explained that it has moved for summary judgment on the amended allegation in the circuit court, contending plaintiffs do not have the facts to support the allegation that a police officer intentionally locked a door to prevent patrons from escaping the Club.

ANALYSIS

We review the legal questions presented on interlocutory appeal *de novo*. Bajalo v. Northwestern University, 369 Ill. App. 3d 576, 580 (2006). When reviewing certified questions under Rule 308, we only answer the certified questions posed. We do not render an opinion or rule on the propriety of any underlying order of the trial court. Applebaum v. Rush University Medical Center, 376 Ill. App. 3d 993, 995 (2007).

6

In 1965, the legislature, responding to the supreme court's prior abolishment of the doctrine of sovereign immunity, enacted the Act to protect local public entities and public employees from liability resulting from the operation of government. DeSmet v. County of Rock Island, 219 Ill. 2d 497, 505 (2006). The purpose of the Act was to ensure that public funds were not dissipated by private damage awards. DeSmet, 219 Ill. 2d at 505. Thereafter, the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, §4) reserved for the legislature the ultimate authority to determine whether local government units were immune from liability in tort. DeSmet, 219 Ill. 2d at 506.

The Act grants only immunities and defenses; it does not create new duties. Village of Bloomingdale v. CDG Enterprises, Inc., 196 Ill. 2d 484, 490 (2001). The issue of whether a duty exists is a separate determination from the issue of whether the governmental unit or employee is immune from liability for a breach of the duty. Village of Bloomingdale, 196 Ill. 2d at 490. The Act implicitly recognizes duties that already exist at common law, and therefore we may refer to the common law when determining whether a public entity owes a duty. Village of Bloomingdale, 196 Ill. 2d at 490. However, if a duty is found, we are required to rely upon the Act to determine whether the entity in question is liable for breach of that duty. Village of Bloomingdale, 196 Ill. 2d at 490.

The first question certified by the trial court asked whether plaintiffs' allegations–that the City engaged in willful and wanton conduct in failing to enforce laws or court orders or by failing to rescue Club patrons–stated a legally sufficient claim that the City breached a duty owed to plaintiffs. The second certified question asked whether section 2-202 of the Act constituted an

7

exception to the City's claim of absolute immunity under sections 2-103 (for failure to enforce laws) and 4-102 (for failure to provide adequate police protection or police service). The third certified question asked whether the codefendants' conduct constituted an intervening cause that broke the causal chain between the City's alleged misconduct and the plaintiffs' injuries.

We address the second certified question, as it is dispositive of the first and third questions. See DeSmet, 219 Ill. 2d at 509 (it is the court's prerogative to forgo the determination of issues unnecessary to the outcome of a case).

Immunity

The City contends, assuming *arguendo* that plaintiffs sufficiently alleged the City owed them a duty of care, that it is immune from liability under sections 2-103 and 4-102 of the Act.

Section 2-103 of the Act provides:

"A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103 (West 2006).

Section 4-102 of the Act states in relevant part:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-102 (West 2006).

The plain language of an immunity demonstrates the legislature's intent, and where no express exception for willful and wanton conduct appears in a provision, the legislature intended to provide unqualified immunity. DeSmet, 219 Ill. 2d at 514. Consequently, sections 2-103 and 4-102 provide unqualified immunity.

In response, plaintiffs argue that another section of the Act limits unqualified immunity. Plaintiffs contend section 2-202 of the Act excludes immunity for willful and wanton conduct. Section 2-202 provides:

"A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2006).

The argument that section 2-202 creates a willful and wanton conduct exception to the absolute immunity afforded by provisions of the Act like sections 2-103 and 4-102 relies primarily on Doe v. Calumet City, 161 Ill. 2d 374 (1994) and its progeny. In Doe, police officer Horka took control of a crime scene and repeatedly prevented rescuers from entering an apartment wherein an intruder was raping a young girl and had choked and threatened her brother. Doe, 161 Ill. 2d at 382-83. Officer Horka knew the children were in danger because their mother had been attacked by the intruder but managed to escape the apartment and had called the police to help rescue her children. Doe, 161 Ill. 2d at 382-83. Officer Horka, however, delayed entering the apartment, questioning the mother in a rude manner, attempting to obtain a key from the landlord, and ringing the front doorbell to gain entry to the apartment despite directions from his supervisor to break down the door.

The Doe court reversed the trial court's order granting the municipality's motion to dismiss, recognizing a willful and wanton exception to the immunity otherwise provided by section 4-102 of the Act. Doe, 161 Ill. 2d at 385-86, 390. Doe held that section 2-202 could be read in conjunction with section 4-102 because Officer Horka was executing and enforcing the law when he took control of the entire crime scene. Doe, 161 Ill. 2d at 390-91. The court held that, where the complaint repeatedly alleged that Officer Horka was in control of the entire crime scene, including the actions of the other officers, a rational trier of fact could find that his conduct was willful and wanton, thereby excepting him from immunity. Doe, 161 Ill. 2d at 390-91. However, the allegations were insufficient to create a jury question regarding willful and wanton conduct by the other officers named in the complaint, who also had responded to the scene and knew the facts surrounding the ongoing crime. Doe, 161 Ill. 2d at 391. The distinguishing factor was the control Officer Horka exercised over the crime scene and over the other officers who responded to the scene. Doe, 161 Ill. 2d at 390-91.

In Fatigato, the plaintiffs sought recovery under the willful and wanton exception of section 2-202, alleging that the officers responding to a domestic dispute call directed the drunk husband to leave the home and allowed him to drive away, after which he caused a collision with the plaintiffs' car. Fatigato v. Village of Olympia Fields, 281 Ill. App. 3d 347, 351-52 (1996). The trial court granted summary judgment in favor of the officers, who claimed immunity under section 4-102 and another section of the Act. Fatigato, 281 Ill. App. 3d at 353. Citing Doe, the Fatigato court reversed, finding that section 2-202's exception for willful and wanton conduct prevailed over the immunity afforded by section 4-102. Fatigato, 281 Ill. App. 3d at 356. The

Fatigato court also ruled that the fact the injured plaintiffs were never under the officers' direct and immediate control did not negate liability under section 2-202. Fatigato, 281 Ill. App. 3d at 357.

Similarly, in Ozik, a jury awarded a verdict in plaintiff's favor where village police officers stopped a drunk driver and issued citations but allowed him to drive away, after which he had an accident that killed his passenger, plaintiff's son. Ozik v. Gramins, 345 Ill. App. 3d 502 (2003). The Ozik court held that Doe abrogated the cases relied upon by the officers to support their propositions that they were not liable for willful and wanton conduct and that section 4-102 provided a blanket immunity that prevailed over the willful and wanton exception stated in section 2-202. Ozik, 345 Ill. App. 3d at 515-16.

However, the holdings in Doe and, by implication, Fatigato and Ozik recently were limited by DeSmet, where a passing motorist witnessed a car run off the road and into a ditch and reported the accident by telephone, but police and rescue personnel failed to respond to the scene of the accident and the driver of the car died. DeSmet, 219 Ill. 2d at 500-02. On appeal to our supreme court, the defendants which included several local governmental entities and their employees contended they did not owe a duty to the plaintiff or, in the alternative, were immune under section 4-102 of the Act. DeSmet, 219 Ill. 2d at 500. The plaintiff, citing Doe, responded that the defendants engaged in willful and wanton conduct pursuant to section 2-202 of the Act and, thus, were not afforded immunity under section 4-102 of the Act. DeSmet, 219 Ill. 2d at 515.

1-05-1954

Our supreme court declined to address the issue concerning the existence of a duty and instead disposed of the case by conducting an analysis of the immunity issue. DeSmet, 219 Ill. 2d at 509. The court distinguished the facts from Doe, noting that in DeSmet: (1) the police did not respond to the scene; (2) if the police had responded to the scene, they would not have been enforcing or executing a law; and (3) the police did not assert control over the situation and did not alter the circumstances at the scene for better or worse. DeSmet, 219 Ill. 2d at 520-21. Consequently, section 2-202 did not operate in DeSmet as an exception to section 4-102 immunity because the police were not executing or enforcing the law and they did not exercise control over the injured driver. DeSmet, 219 Ill. 2d at 521.

This court recently applied DeSmet in Ware v. City of Chicago, 375 Ill. App. 3d 574, 575-76 (2007), where the plaintiffs sued the City for damages resulting from a porch collapse wherein 13 people died and numerous people were injured. The plaintiffs alleged willful and wanton conduct on the part of the City, including its failure to adequately inspect the porch and ensure that it complied with the building code. Ware, 375 Ill. App. 3d at 576. On interlocutory appeal, this court considered, *inter alia*, whether section 2-202 created an exception to the immunity afforded by section 2-103 of the Act. Ware, 375 Ill. App. 3d at 581-83. This court held that several of the Act's immunity provisions, including section 2-103, immunized the City against the plaintiffs' allegations, and section 2-202 did not operate to create a willful and wanton exception to those immunities. Ware, 375 Ill. App. 3d at 583-84. Ware noted that our supreme court in DeSmet limited the conjunctive applicability of the willful and wanton exception in section 2-202 to section 4-102 of the Act and the unique facts present in Doe. Ware, 375 Ill.

12

App. 3d at 583.

In <u>Bowler v. City of Chicago</u>, 376 Ill. App. 3d 208 (2007), this court again addressed and rejected the argument that the absolute immunity afforded by section 2-103 was limited by section 2-202's exception for willful and wanton conduct. In <u>Bowler</u>, the plaintiff's son was injured when he fell off the roof of a building, and plaintiff, as guardian, sued the City, alleging willful and wanton conduct based on the City's failure to enforce the building code and issuance of a permit for construction despite knowledge that the design violated the building code. <u>Bowler</u>, 376 Ill. App. 3d at 210-11. This court affirmed the circuit court's order granting the City's motion to dismiss, which asserted, among other immunities, immunity under section 2-103 of the Act. <u>Bowler</u>, 376 Ill. App. 3d at 211-12. Relying on <u>Ware</u>, this court held that section 2-202 could not be read to limit the absolute immunity provided by section 2-103. <u>Bowler</u>, 376 Ill. App. 3d at 216.

We now address the parties' specific claims concerning immunity in the instant case. The parties have separated plaintiffs' allegations of the City's willful and wanton conduct into two categories–pre-incident conduct and conduct at the scene–because they implicate different sections of Act. The first category concerns the allegations that the City failed to enforce the building code and court orders that barred the use of the Club's second floor. The second category concerns the allegations that the police failed or refused to protect or assist the victims at the scene.

Pre-Incident Conduct

As to the pre-incident conduct, plaintiffs alleged that the City allowed patrons to enter

1-05-1954

and gather on the premises of the Club and allowed the Club to operate despite knowledge that it was dangerous to patrons, was structurally unsound, lacked adequate exits and fire protection, was severely overcrowded, and operated in violation of occupancy limits, the building code, and court orders.

The City notes that when the Club opened in violation of the court orders, it was in contempt of court and in violation of the building code. Consequently, the City argues that section 2-103's immunity for the failure to enforce any law shields the City from liability based on plaintiffs' allegations that it failed to enforce laws and court orders that would have prevented the Club from operating. See O'Fallon Development Co. v. City of O'Fallon, 43 Ill. App. 3d 348, 359 (1976) (section 2-103's immunity extends to the failure to enforce all manner of statutes and ordinances). Furthermore, the City argues section 4-102 immunity for the failure to prevent or detect crimes also shields it from plaintiffs' allegation that it failed to prevent the Club's owners' criminal contempt of the court order requiring closure of the building's second floor.

Plaintiffs complain the City has mischaracterized their allegations as premised on the City's failure to prevent the Club from operating illegally. Plaintiffs assert they have not alleged a mere generic failure to take some general action. Plaintiffs contend their allegations focus on specific City conduct that represented an ongoing series of actions whereby the City actively inserted itself into the situation over a period of months in enforcing the law against the Club. Plaintiffs specifically alleged that the City received complaints about the Club's unsafe operation and condition and affirmatively responded by going to the premises and inspecting it. Then, the City went to court and obtained orders shutting down the Club's second floor. Moreover, the

14

1-05-1954

City was on notice of the Club's continued wrongful operation because the City monitored the premises due to calls about criminal and other problems that seemed to plague the Club, and because police and fire department employees also worked for the Club as security management or personnel. Plaintiffs argue the alleged conduct constitutes the type of direct action or affirmative involvement by a municipality that brings this case within the ambit of Doe and section 2-202's exception for willful and wanton conduct rather than DeSmet and the unqualified immunity afforded by sections 2-103 and 4-102.

Plaintiffs' attempt to turn allegations concerning the City's failure to act into a course of direct action is not persuasive. This court rejected a similar argument in Bowler, where the plaintiff argued that she did not merely claim that the City failed to enforce the building code but, rather, that the City acted willfully and wantonly by carving out an exception to the building code that did not exist. Bowler, 376 Ill. App. 3d at 216-17. Specifically, the plaintiff noted that the City and its employees approved blueprints and the construction permit, overlooked obvious violations on reinspection, entered an order for the permit, and allowed the company to construct the roof access. This court rejected the plaintiff's argument, stating that the essence of her claim was that the City and its employees did nothing to enforce the building code. Bowler, 376 Ill. App. 3d at 217. Here, the master complaints do not allege that the Club patrons' injuries and deaths occurred while anyone was in the course of putting into effect any law. Instead, the complaints allege that the City's course of action was over and the City was doing nothing–which is the subject of section 2-103's immunity for failing to enforce any law.

Plaintiffs argue that section 2-202, rather than 2-103, should apply in cases like this

15

where enforcement of the law stopped after some action was taken. We disagree. Section 2-103's plain language applies to the pre-incident conduct at issue here. We must give effect to the Act's plain language and may not read in exceptions, limitations or conditions that the legislature did not express. DeSmet, 219 Ill. 2d at 509-10. Contrary to plaintiffs' assertions, the plain language of section 2-103 does not limit its applicability only to situations involving a total failure to take any steps to enforce the law. Sections 2-202 and 2-103 each have their own realm of applicability. Section 2-202 would apply if a plaintiff sued a public *employee* alleging negligent acts or omissions in the execution or enforcement of the law, but section 2-103 would not apply because it affords immunity to a public *entity*. Moreover, if that plaintiff alleged willful and wanton conduct, then section 2-202 would not immunize that public employee either. Here, plaintiffs have not sued or alleged misconduct by any specific City employee. Furthermore, this court has held that section 2-202's willful and wanton conduct exception cannot be read to limit 2-103's absolute immunity for public entities. Bowler, 376 Ill. App 3d at 216.

Plaintiffs also argue that section 2-103's applicability should be limited to legislation-related acts like the adoption of laws because the initial clause in section 2-103 provides immunity for adopting or failing to adopt an enactment. We reject plaintiffs' argument. Such an interpretation would excise the "failing to enforce any law" clause from section 2-103, and courts do not possess that authority. DeSmet, 219 Ill. 2d at 511.

We find that the City was afforded immunity under section 2-103 of the Act for plaintiffs' allegations concerning the pre-incident conduct. Because the broad language of section 2-103

covers all the pre-incident conduct allegations, we need not address the City's argument that section 4-102 afforded an additional basis for immunity.

Conduct at the Scene

Plaintiffs alleged that once the police were at the Club at the time of the occurrence, the City engaged in willful and wanton conduct when it undertook to execute and enforce the laws and perform police duties, which included crowd control and crowd management, and "failed to timely and properly remove and extricate patrons trapped in the stairwell from the top and bottom of the pile." On appeal, plaintiffs argue that the Club was a crime scene and, consequently, City employees were actively involved in taking control of the crime scene and investigating and preserving evidence. See Fitzpatrick v. City of Chicago, 112 Ill. 2d 211, 221-22 (1986) (a police officer was found to be enforcing the traffic laws for purposes of section 2-202 of the Act when he was involved in investigating a multi-vehicle highway accident).

The City contends section 4-102's absolute immunity (for the failure to provide adequate police protection or service) shields it from liability for plaintiffs' allegations that it failed to adequately assist trapped Club patrons. Crowd control and management are typical police functions that fall within the meaning of police protection or service immunized by section 4-102. Cadena v. Chicago Fireworks Manufacturing Co., 297 Ill. App. 3d 945, 954-55 (1998). Moreover, providing rescue services or assistance is a function typically performed by the police that is covered by section 4-102. Fender v. Town of Cicero, 347 Ill. App. 3d 46, 53 (2004) (police responded to a residential fire where victims were trapped inside the building); Kavanaugh v. Midwest Club, Inc., 164 Ill. App. 3d 213, 221 (1987) (police responded to a call

that a vehicle drove off the road and into a retention pond).

Plaintiffs argue that section 2-202's immunity exception for willful and wanton conduct prevails over section 4-102's absolute immunity because–like Doe and unlike DeSmet–the police here responded to the scene of the incident and were executing and enforcing the law. We disagree.

The applicability of Doe and section 2-202 versus section 4-102 depends upon the nature of the governmental activity. "Section 4-102 immunity may apply in the context where police officers are simply 'providing [or failing to provide] police services,' but section 2-202 immunity requires more particular circumstances for its application, *i.e.*, an act or a course of conduct 'in the execution or enforcement' of law." Aikens v. Morris, 145 Ill. 2d 273, 282 (1991). Initially, we note that plaintiffs' complaints do not allege what specific law the officers were attempting to execute or enforce or what specific acts the officers took to manage or control the crowd. In any event, even if the City's police officers engaged in a course of conduct that constituted the execution and enforcement of laws, we find Doe and its application of section 2-202 distinguishable from the facts at issue here.

Our supreme court in DeSmet limited the conjunctive applicability of the willful and wanton exception in section 2-202 to section 4-102 of the Act and the unique facts present in Doe. Ware, 375 Ill. App. 3d at 583. DeSmet, however, made clear that allegations that the police responded to the scene and executed or enforced the law but failed to assist a plaintiff were not sufficient to enable section 2-202's immunity exception to prevail over section 4-102's

18

immunity. Specifically, <u>DeSmet</u> emphasized that, in <u>Doe</u>, the conduct of the officer who controlled the scene and prevented others from rescuing the endangered children was a distinguishing fact critical to <u>Doe</u>'s holding. <u>DeSmet</u>, 219 Ill. 2d at 519. Notably, the plaintiff in <u>Doe</u> failed to allege a willful and wanton conduct claim against the other police officers at the scene enforcing the law, who did not exercise the requisite degree of control over the scene or prevent others from assisting. <u>DeSmet</u>, 219 Ill. 2d at 519.

Here, plaintiffs have not alleged facts sufficient to show that the City exercised the requisite degree of control over the scene in a manner that altered the status quo to the Club patrons' detriment. Unlike <u>Doe</u>, there are no allegations here that the police restrained or prevented anyone from rendering assistance. Accordingly, like the court in <u>DeSmet</u>, we conclude that section 2-202 of the Act does not apply in the instant case as an exception to section 4-102 immunity.

In addition, we note another reason why section 2-202 of the Act does not apply in the instant case as an exception to the immunity conferred by section 4-102. The plain language of section 2-202 states that a "*public employee* is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." (Emphasis added.) 745 ILCS 10/2-202 (West 2006). The plain language of section 2-202 does not purport to apply to *public entities*, such as the City. This court has held that section 2-202 did not apply as an exception to section 4-102 (which confers immunity on both public entities and public employees) when the complaint did not name an individual public employee as a defendant. <u>Barnes v. Chicago Housing Authority</u>, 326 Ill. App. 3d 710, 719 (2001). Although

the plaintiffs in <u>DeSmet</u> and <u>Doe</u> named both local public entities *and* individual public employees as defendants, here, in contrast, plaintiffs have not named any individual employee of the City as a defendant.

Given our determination that the City is immune from liability for its alleged failure to enforce laws or court orders or provide police protection, we need not address whether the City owed a duty to plaintiffs or whether there was a causal connection between the City's conduct and the injuries sustained by plaintiffs.

## CONCLUSION

For the foregoing reasons, we answer the second certified question in the negative. We do not address the first and third certified questions because our answer to the second certified question is dispositive of the first and third certified questions. We remand the cause to the circuit court.

Certified question answered; cause remanded.

O'BRIEN and GALLAGHER, JJ., concur.

JESSE ANTHONY, Special Administrator of the Estate of Nita Anthony, Deceased, *et al.*,

Plaintiffs-Appellees,

v.

THE CITY OF CHICAGO,

Defendant-Appellant

(LeMirage Studio, Ltd., d/b/a Club E2; LeMirage All-Night Studio, Inc., d/b/a Club E2; The Clique, Ltd., d/b/a Club E2; Lesly Motors, Inc.; Lesley Benodin; Dwain Kyles; Calvin Hollins; Team One Security; Envy Productions & Entertainment Company, Inc.; Marco Flores; Vaughn Woods; Clear Channel Communications, d/b/a WGCI; and Ira Navarro

Defendants).

No. 1-05-1954

Appellate Court of Illinois
First District, FIFTH DIVISION

May 16, 2008

Justice Margaret O'Mara Frossard authored the opinion of the court:

Justice O'Brien and Justice Gallagher concur.

Appeal from the Circuit Court of Cook County.
The Hon. Kathy M. Flanagan, Judge Presiding.

**Counsel for Defendant-Appellant**
Mara S. Georges, Corporation Counsel of the City of Chicago, Chicago, IL 60602
OF COUNSEL: Benna Ruth Solomon, Myriam Zreczny and Kerrie Maloney Laytin

**Counsel for Plaintiffs-Appellees**
Michael W. Rathsack, Chicago, IL 60602

and

Cochran, Cherry, Givens, Smith & Montgomery, LLC, Chicago, IL 60602
OF COUNSEL: James D. Montgomery and Melvin L. Brooks