# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 15 2016, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ricky D. Wessel, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 15, 2016 <br><br> Court of Appeals Case No. 49A02-1601-CR-17 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Peggy Hart, Commissioner <br><br> Trial Court Cause No. 49G20-1502-F5-4730 |

**Pyle, Judge.**

# Statement of the Case

Ricky Wessel ("Wessel") appeals his conviction, following a jury trial, for Level 5 felony carrying a handgun without a license.[1] Wessel contends that there was insufficient evidence to support his conviction. Concluding that Wessel's contention is merely a request to reweigh the evidence, we affirm the conviction.

We affirm.

# Issue

Whether sufficient evidence supports Wessel's conviction.

# Facts

On February 6, 2015, at around 2:00 A.M., Indianapolis Metropolitan Police Department ("IMPD") Officer Erin Anderson ("Officer Anderson") was dispatched to the 2100 block of Lexington Avenue upon a report that two Hispanic males were carrying handguns. Officer Anderson, in her fully-marked police vehicle and police uniform, arrived at the location a few minutes after the dispatch and saw two men walking east near Lexington Avenue. She later identified one of the men as Wessel. Officer Anderson parked her vehicle approximately ten to fifteen feet away from the men and shined her headlights directly on the pair. Walking two to three feet apart, the men first stopped when they saw Officer Anderson, but they then began walking towards her

---

[1] IND. CODE § 35-47-2-1(a), (e)(2)(B).

vehicle. Officer Anderson observed the men looking back at her, and then Wessel, who had his hands down at his sides, dropping something from his hand. (Tr. 30, 42). Based on the impact of the object, Officer Anderson "knew it was something heavy." (Tr. 40). Shortly thereafter, Officer Anderson exited her car, asked the men what was going on, and began to approach them. Officer Anderson further observed that Wessel was continuously looking back at the object he had dropped. Wessel's actions led Officer Anderson to be concerned that the object was a weapon, and she requested backup.

[4] Shortly thereafter, Officer Bob Tyron arrived at the scene and stayed with the men as Officer Anderson went to investigate the area where Wessel had dropped the object. While searching the area with a flashlight, Officer Anderson found a silver revolver with a brown handle. Officer Anderson did not touch the weapon, but rather stood by it as she waited for an evidence technician to recover it. It was later determined that Wessel did not have a license to carry a handgun.

[5] The State charged Wessel with Count 1, carrying a handgun without a license, as a Class A misdemeanor. The charge was further enhanced to Level 5 felony carrying a handgun without a license based on the allegation that Wessel had "previously been convicted of a felony within fifteen (15) years before the date of this offense, that is: intimidation, a Class D felony." (App. 24). A bifurcated jury trial was held on November 17, 2015. During Phase I of the trial, Officer Anderson testified as to the facts of the possession of a handgun without a license charge. The State further introduced Exhibit 3, which Officer Anderson

testified was the "firearm, the cylinder that goes in the firearm and [] the [eight] live rounds that were in the firearm." (Tr. 37). Officer Anderson testified that the serial number on the weapon matched those she had recorded in her report on the night of the offense. The jury found Wessel guilty of the Class A misdemeanor charge.

[6] During Phase II of trial, Matthew Wiesjahm ("Wiesjahm") of the IMPD testified as a fingerprint analyst and keeper of records. Wiesjahm testified that he had compared Wessel's fingerprints created from his arrest in this case to the thumbprint on a certified Officer's Arrest Report ("OAR") from Wessel's 2004 felony intimidation arrest under the cause number ending in 142017. Wiesjahm found that the two fingerprints were made by "one and the same person" whom he identified as Ricky Wessel. (Tr. 90). The State further introduced Exhibit 6, a certified Chronological Case Summary ("CCS") which included an entry showing that Wessel had been previously convicted in 2005 of Class C felony intimidation under cause number 49G17-0408-FC-142017. At the conclusion of the second phase of trial, the jury found Wessel guilty of Level 5 felony carrying a handgun without a license based upon its determination that he had a prior felony conviction within fifteen years of the current offense.

[7] On December 16, 2015, the trial court held a sentencing hearing. The trial court imposed an executed four (4)-year sentence, two (2) years of which were to be served with the Indiana Department of Correction and two (2) years in Community Corrections. Wessel now appeals.

# Decision

Wessel argues that the State presented insufficient evidence to support his conviction for Level 5 felony possession of a handgun without a license. He challenges the evidence supporting the trial court's conclusion that he possessed a handgun and the evidence supporting his prior felony conviction enhancement.

In *Drane v. State*, 876 N.E.2d 144, 146-47 (Ind. 2007), our Indiana Supreme Court stated our standard of review for a challenge to the sufficiency of the evidence as follows:

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of the appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably in the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane*, 876 N.E.2d at 146-47 (internal quotation marks and citations omitted) (emphasis in original).

INDIANA CODE § 35-47-2-1(a) provides, in relevant part, that "a person shall not carry a handgun . . . on or about the person's body without being licensed under this chapter to carry a handgun." This statute provides that a person who violates this provision commits a Class A misdemeanor. I.C. § 35-47-2-1(e). However, the offense is a Level 5 felony . . . if the person . . . has been convicted of a felony within fifteen (15) years before the date of the offense." *See* I.C. § 35-47-2-1(e)(2)(B). Thus, to convict Wessel of Level 5 carrying a handgun without a license as charged, the State needed to prove beyond a reasonable doubt that Wessel knowingly carried a handgun, did not have a license to do so, and that he had been convicted of a prior felony within fifteen years of the underlying offense.

We address Wessel's first challenge to his carrying a handgun without a license conviction. Wessel admits that he dropped the object found by Officer Anderson but argues that there was insufficient evidence to show that it was a handgun. Specifically, Wessel argues that "the State's sole witness did not test fire the object, touch the object or closely examine it," thereby failing to prove it was capable of expelling a projectile by means of explosion. (Wessel's Br. 12).

The statutory definition of a handgun means any firearm:

> (1) designed or adapted so as to be aimed and fired from one (1) hand, regardless of barrel length; or
>
> (2) any firearm with;
>
>> (A) a barrel less than sixteen (16) inches in length; or

(B) an average length of less than twenty-six (26) inches.

I.C. § 35-47-1-6. Under Indiana law, a firearm is "any weapon that is capable of expelling, or designed to expel, or that may readily be converted to expel a projectile by means of an explosion." I.C. § 35-47-1-5.

[13]     Contrary to Wessel's assertion that the State failed to prove that the object he dropped was a handgun, Indiana law does not require the State to prove the gun was operable at the time. *State v. Gibbs*, 769 N.E.2d 594, 596-97 (Ind. Ct. App. 2002), *trans. denied*. It is sufficient for the State to establish that the handgun was designed to expel a projectile by means of explosion, rather than actually and currently capable of doing so. *Id.* (citing *Manley v. State*, 656 N.E.2d 277, 279 (Ind. Ct. App. 1995), *trans. denied*). The objective behind our Court's interpretation of the possession of a handgun without a license statute likely reflects our legislature's recognition that a firearm is inherently dangerous, even if inoperable or unloaded, because firearms can create a substantial risk of harm to others. *Id.*

[14]     Here, the State presented sufficient evidence showing that Wessel had possession of a handgun, which was capable of expelling a projectile, without a license. The State introduced the gun into evidence with no objections. Moreover, Officer Anderson, an eight-year IMPD veteran, specifically identified that the object that Wessel had dropped as a firearm. The evidence introduced also contained the cylinder of the firearm necessary to expel the live rounds that were in the firearm. Wessel's contention that the State failed to prove beyond a reasonable doubt that the object in question was a handgun is

merely a request for this Court to reweigh the evidence presented at trial, which we will not do. *See Drane*, 876 N.E.2d at 146.

[15] As for Wessel's prior felony conviction challenge, he argues that the documents presented by the State were insufficient to support the prior felony enhancement of his possession of a handgun without a license conviction. When reviewing the issue of insufficient evidence to support a prior felony conviction, we must consider only evidence with substantial probative value. *Dexter v. State*, 959 N.E.2d 235, 239 (Ind. 2012). Our Indiana Supreme Court has held that:

> Certified copies of judgements or commitments containing a defendant's name or a similar name may be introduced to prove the commission of prior offenses. While there must be supporting evidence to identify the defendant as the person named in the documents, the evidence may be circumstantial. If the evidence yields a logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that it was a defendant who was convicted of the prior felony, then a sufficient connection has been shown.

*Tyson v. State*, 766 N.E.2d 715, 718 (Ind. 2002) (internal citations omitted.). Furthermore, we have explained that when proving a prior conviction, "[t]he issue is proof beyond a reasonable doubt, and that proof may be achieved by the use of any properly admissible evidence sufficient to establish the ultimate fact." *Grant v. State*, 870 N.E.2d 1049, 1051 (Ind. Ct. App. 2007), *trans. denied*.

[16] Contrary to Wessel's assertion, the evidence presented at trial was sufficient to support his prior felony conviction enhancement. Here, the State introduced a thumbprint identification card produced by Wiesjahm, as well as a certified

thumbprint on OAR from Wessel's 2004 arrest with the cause number ending in 142017. The OAR included Wessel's name and date of birth. The State also introduced a certified CCS with cause number 49G17-0408-FC-142017, which contained an entry showing that Wessel had been convicted of Class C felony intimidation in 2005. The CCS included Wessel's name and date of birth, which matched the name and date of birth identifying Wessel in the OAR. Additionally, Wiesjahm, who testified as a fingerprint analyst, compared the two documents and determined that the thumbprints were from the same person.

[17] Wessel cites to *Dexter* and *Abdullah v. State*, 847 N.E.2d 1031 (Ind. Ct. App. 2006) to support his claim that the certified CCS and other documents were not sufficient to show that he had a prior felony conviction. *Dexter*, 959 N.E.2d at 235. These cases, however, do not support his contention. Wessel misinterprets the case law from *Abdullah*, which provides that beside an entry of judgment under Trial Rule 58, "there are numerous other means by which the State may elect to prove a prior conviction[,] . . . including . . . case chronologies." *Abdullah*, 847 N.E.2d at 1034. Furthermore, *Dexter* is clearly distinguishable from the present case. In that case, the State tried to prove a prior conviction by presenting an unsigned abstract of judgment and a "Rules of Probation" form, which merely stated the terms of probation. Here, however, that State presented a certified copy of a CCS, which included Wessel's identifying information and information regarding his prior felony conviction. Our Indiana Trial Rules state that a CCS is an official record of the court. *See*

T.R. 77(B). With certified copies of Wessel's CCS and OAR, and the identification testimony from Wiesjahm, a reasonable jury could find, beyond a reasonable doubt, that Wessel was the same person convicted of a prior felony within fifteen years of the underlying conviction. *See e.g. Grant*, 870 N.E.2d at 1051 (finding fingerprint evidence from arrest reports and CCS "gallery numbers" from prior felony convictions presented at trial sufficient to support a prior felony conviction). Accordingly, we affirm Wessel's Level 5 felony possession of a handgun without a license conviction.[2]

[18] We affirm.

Kirsch, J., and Riley, J., concur.

---

[2] We note that Wessel's suggestion that his due process rights were violated under the U.S. and Indiana Constitution is waived because he makes no cogent argument or citation to any authority. *See* Ind. App R. 46(A)(8)(a).